**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Rumon A. ROBINSON, Defendant–Appellant.**

No. 05CA1231.

Colorado Court of Appeals, Div. III.

May 29, 2008.

As Modified on Denial of Rehearing July 10, 2008.

John W. Suthers, Attorney General, Sean A. Moynihan, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Ellen K. Eggleston, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge J. JONES.

Defendant, Rumon A. Robinson, appeals the judgments of conviction entered on jury verdicts finding him guilty of two counts of possession of more than one gram of a schedule II controlled substance, two counts of possession of a weapon by a previous offender, and one special offender—deadly weapon sentence enhancer. He also appeals the sentence imposed. We affirm.

## I. Background

In 2004, two police officers on routine patrol stopped defendant's car because they noticed that the license plates were registered to a different vehicle. Defendant gave the officers a false name and date of birth, and failed to provide a valid driver's license, vehicle registration, or proof of insurance. The officers took defendant into custody, and placed him in the back of the police car. The officers also instructed a female who had been riding as a passenger in defendant's vehicle to get out of the vehicle so the officers could search it. The officers found a loaded .38 caliber handgun (located between the driver's seat and the driver's side door), a loaded .45 caliber semi-automatic pistol (located under the driver's seat), a plastic box containing cocaine and methamphetamine, two glass pipes, two baggies containing marijuana, a cigar with marijuana residue in it, and, inside the female passenger's handbag, a switchblade and a tin containing marijuana residue.

The People charged defendant with two counts of possession of more than one gram of schedule II controlled substances (cocaine and methamphetamine)—second offenses, in violation of section 18–18–405(1), (2)(a)(I)(B),

C.R.S.2007; two counts of possession of a weapon by a previous offender, in violation of section 18–12–108(1), C.R.S.2007; and one count of a special offender—deadly weapon sentence enhancer pursuant to section 18–18–407(1)(f), C.R.S.2007.

Prior to trial, defendant filed a motion requesting (1) that the two counts for possession of a schedule II controlled substance be tried separately, to a different jury, from the two counts for possession of a weapon by a previous offender, or (2) that bifurcated trials be ordered on the controlled substance and weapons counts, or (3) that he be allowed to waive his right to a jury and have all counts tried to the court. On the day trial was set to begin, defendant's counsel requested that the jury trial be limited to the controlled substance counts and the special offender—deadly weapon sentence enhancer, and that if the jury found defendant guilty of those charges, the court should decide whether defendant had prior convictions so as to make him guilty of the prior offender counts. Defendant's counsel then altered course and renewed his request for a different jury on the special offender counts.

The court ordered a bifurcated trial in which all counts would be presented to the same jury, with the controlled substance counts being tried first. Defendant's counsel objected to the court's ruling and requested that defendant be allowed to waive his right to a jury trial and proceed to a trial by the court on all counts. The People objected to defendant's waiver of a jury trial.

The case was tried to a jury in a bifurcated proceeding. The jury found defendant guilty of both counts of possession of a controlled substance, as well as the special offender—deadly weapon sentence enhancer. Then, after the jury was informed that it must also determine defendant's guilt on the previous offender counts, evidence was presented on those counts. The jury found defendant guilty of both counts of possession of a weapon by a previous offender.

The court sentenced defendant to two concurrent sixteen-year terms of imprisonment for the controlled substance convictions and two concurrent eighteen-month terms of imprisonment for the previous offender convic-

tions, all to be served in the custody of the Department of Corrections, as well as a mandatory parole period.

## II. Discussion

### A. *Batson* Challenge

Defendant, who is African–American, contends the district court erred in denying his *Batson* challenge to the People's use of a peremptory challenge to excuse the only African–American potential juror. We disagree.

During voir dire, the prosecutor first questioned another potential juror, Mr. G., about his opinion of the current drug laws. Mr. G. responded that he felt the drug laws were "generally fair," but that some penalties were "severe." The prosecutor then told Mr. G. and the rest of the panel that the jury in this case would not have any part in deciding defendant's penalty, and asked Mr. G. if he would be able to "just look at it that way." Mr. G. replied that he would.

The prosecutor then turned his attention to the juror at issue, Ms. V., and the following exchange took place:

[PROSECUTOR]: Um, Ms. [V.]?

MS. [V.]: Yes.

[PROSECUTOR]: How about you? How do you feel about [the drug laws]?

MS. [V.]: Um, I feel like I could be fair.

[PROSECUTOR]: Actually, really, I'm asking about the drug laws, how do you feel?

MS. [V.]: That they're fair, but like they're pretty strenuous.

[PROSECUTOR]: I'm sorry, you're very soft spoken. I'm a little hard of hearing, I admit. Could you repeat that?

MS. [V.]: I feel the same way [Mr. G.] does, like we don't need to be concerned with it.

The prosecutor did not ask Ms. V. any other questions in the course of voir dire.

After voir dire, the prosecutor challenged certain jurors for cause, including Ms. V. The prosecutor asserted that Ms. V. had slept through "a large part of voir dire," nodding off "at least twice," thereby rendering her

incapable of providing "fair jury service." Defendant's counsel objected and argued that had Ms. V. slept during the proceedings, the prosecutor should have immediately informed the court. The court denied the prosecutor's challenge for cause, stating:

> I'm denying the challenge for Ms. [V.] I did not notice her sleeping. I face the jury, but I don't [stare] obviously at any particular juror throughout, and I didn't notice it. So I am going to deny that one.

The prosecutor subsequently exercised a peremptory challenge against Ms. V. Defendant's counsel raised a *Batson* objection, arguing that, because Ms. V. was the only African–American potential juror, the prosecutor's claim that he saw her falling asleep was suspect, particularly since no one else corroborated that allegation. The prosecutor responded as follows:

> Your Honor, regarding [Ms. V.], there are numerous reasons I exercise any peremptory challenge. First of all, um, during one occasion when juror number 17, Ms. [K.] made the statement where she thinks police officers don't lie, I noticed a very strong reaction on the part of [Ms. V.], and where she opened her eyes wide and shook her head.
>
> I didn't see any other juror do that, indicating to me that's a very strong disagreement with what Ms. [K.] said, which to me indicated a, um, indicates a tendency to disbelieve the police. Even if she hadn't testified to that previously, throughout the jury selection I saw her with her eyes closed and face pointed down. I didn't know throughout jury selection whether she was sleeping or whether that was just the way she listens to things, but I noticed actually when Your Honor was giving the final set of instructions, prior to the challenges for cause, that's when I noticed her nodding off, and I noticed that, probably about a minute before I said anything to the Court, was when I noticed her nodding off.
>
> And, um, I don't think that someone nodding off during—while the jury selection process is taking place, is someone who is going to give—whether for their own reason, or because they're tired or

whatever, is going to be able to give their full consideration to the evidence that I've presented or arguments of counsel, that's the reason that I struck the juror.

The court denied defendant's counsel's *Batson* objection, stating:

> The Court finds that . . . the D.A. has stated an articulable non-racial [basis] for his peremptory, which is the standard. So the motion for, I guess, reinstating Ms. [V.] into the jury is denied. Thank you.

### 1. Applicable Law

■ The use of peremptory challenges to purposefully discriminate against jurors of a protected class violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 146, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994); *Batson v. Kentucky*, 476 U.S. 79, 87, 89, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); *Craig v. Carlson*, 161 P.3d 648, 653 (Colo.2007). "Purposeful racial discrimination in selection of the venire violates a defendant's right to equal protection because it denies him the protection that a trial by jury is intended to secure." *Batson*, 476 U.S. at 86, 106 S.Ct. 1712. "Although a defendant has no right to a 'petit jury composed in whole or in part of persons of [the defendant's] own race,' he or she does have the right to be tried by a jury whose members are selected by nondiscriminatory criteria." *Powers v. Ohio*, 499 U.S. 400, 404, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991) (citation omitted) (quoting *Strauder v. West Virginia*, 100 U.S. 303, 305, 25 L.Ed. 664 (1879)).

■ " 'Discriminatory purpose' . . . implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker . . . selected . . . a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Hernandez v. New York*, 500 U.S. 352, 360, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991) (plurality opinion) (quoting *Personnel Adm'r v. Feeney*, 442 U.S. 256, 279, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979)); *id.* at 372–73, 111 S.Ct. 1859 (O'Connor, J., concurring).

"*Batson* outlines a three-step process for evaluating claims of racial discrimination in jury selection under the Equal Protection Clause." *People v. Cerrone*, 854 P.2d 178, 185 (Colo.1993) (citing *Hernandez*, 500 U.S. at 358–59, 111 S.Ct. 1859 (plurality opinion), and *Batson*, 476 U.S. at 93–98, 106 S.Ct. 1712); *accord Snyder v. Louisiana*, —— U.S. ——, ——, 128 S.Ct. 1203, 170 L.Ed.2d 175 (2008); *Purkett v. Elem*, 514 U.S. 765, 767, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995); *Valdez v. People*, 966 P.2d 587, 589 (Colo.1998). The opponent of a peremptory challenge must make out a prima facie case of racial discrimination. If the opponent of the challenge does so, the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation. If the proponent of the strike meets that burden, the trial court must decide whether the opponent of the strike has proved purposeful racial discrimination. *Snyder*, —— U.S. at ——, 128 S.Ct. 1203; *Purkett*, 514 U.S. at 767, 115 S.Ct. 1769; *Hernandez*, 500 U.S. at 358–59, 111 S.Ct. 1859 (plurality opinion); *Hernandez*, 500 U.S. at 375, 111 S.Ct. 1859 (O'Connor, J., concurring); *Batson*, 476 U.S. at 96–98, 106 S.Ct. 1712. "[T]he ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." *Purkett*, 514 U.S. at 768, 115 S.Ct. 1769; *accord Valdez*, 966 P.2d at 589.

In this case, the People do not dispute that defendant made out a prima facie case of racial discrimination. At trial, the prosecutor proceeded to offer race-neutral explanations, and the court denied the objection. Accordingly, the first step of the *Batson* analysis is not at issue here. *See Hernandez*, 500 U.S. at 359, 111 S.Ct. 1859 (plurality opinion) (once the prosecutor has offered a race-neutral reason and the court has ruled on the ultimate question of intentional discrimination, the preliminary issue whether the defendant established a prima facie case is moot).

On appeal, defendant challenges the sufficiency of the prosecutor's explanation at step two and the district court's ultimate denial of his *Batson* objection at step three. We turn our attention to those issues.

### 2. Race–Neutral Explanation

At step two, the prosecutor's explanation must be "based on something other than the race of the juror," and will be deemed race-neutral provided there is no discriminatory intent inherent in the prosecutor's explanation. *Hernandez*, 500 U.S. at 360, 111 S.Ct. 1859 (plurality opinion); *id.* at 372–74, 111 S.Ct. 1859 (O'Connor, J., concurring); *see also Craig*, 161 P.3d at 654. We review whether the prosecutor offered a race-neutral explanation de novo. *Valdez*, 966 P.2d at 590.

Relying on *People v. Marion*, 941 P.2d 287 (Colo.App.1996), and *State v. Cruz*, 175 Ariz. 395, 857 P.2d 1249 (1993), defendant argues that both of the prosecutor's explanations for striking Ms. V. were not race-neutral because they were inherently subjective and were not corroborated by any objective evidence. We are not persuaded.

The division in *Marion* recognized that in *Cruz* the court held that "a prosecutor's facially neutral but wholly subjective reason for exercising peremptory challenges must be coupled with some objective verification to overcome a *prima facie* showing of discrimination." *Marion*, 941 P.2d at 292 (citing *Cruz*, 857 P.2d at 1253). Contrary to defendant's position, however, the division did not adopt the *Cruz* test requiring objective verification. Rather, the division held that the prosecutor met the burden of articulating a race-neutral explanation "because discriminatory intent was not inherent in the prosecutor's explanation...." *Id.* The division then went on to say that even if it were to apply the more stringent *Cruz* test, it would find the prosecutor's explanation sufficient.

The *Cruz* objective verification test is incompatible with controlling precedent. It is not necessary that the prosecutor's race-neutral explanation be "persuasive, or even plausible." *Purkett*, 514 U.S. at 767–68, 115 S.Ct. 1769; *see also Johnson v. California*, 545 U.S. 162, 171, 125 S.Ct. 2410, 162 L.Ed.2d 129 (2005) ("[E]ven if the State produces only a frivolous or utterly nonsensical justification for its strike, the case does not end—it merely proceeds to step three.");

*Miller–El v. Cockrell*, 537 U.S. 322, 339, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003) (*Miller–El I* ); *People v. Davis*, 935 P.2d 79, 82 (Colo. App.1996) ("It is not necessary that the prosecutor's race-neutral justification contain a plausible basis for believing that a particular member of the venire would not be an effective juror.") (citing *Purkett* ). Rather, "the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Hernandez*, 500 U.S. at 360, 111 S.Ct. 1859 (plurality opinion); *id.* at 372–74, 111 S.Ct. 1859 (O'Connor, J., concurring); *accord Purkett*, 514 U.S. at 768, 115 S.Ct. 1769; *Craig*, 161 P.3d at 654; *see also Fields v. People*, 732 P.2d 1145, 1156–57 (Colo.1987). "It is not until the third step that the persuasiveness of the justification becomes relevant—the step in which the trial court determines whether the opponent of the strike has carried his burden of proving purposeful discrimination." *Purkett*, 514 U.S. at 768, 115 S.Ct. 1769 (emphasis in original); *accord Johnson*, 545 U.S. at 171, 125 S.Ct. 2410.

We observe that the Arizona Supreme Court and the Arizona Court of Appeals have acknowledged that in the wake of *Purkett*, the *Cruz* objective verification requirement is no longer viable. *See State v. Canez*, 202 Ariz. 133, 42 P.3d 564, 577 (2002) (noting that "*Cruz* appears not to have survived *Purkett* "); *State v. Eagle*, 196 Ariz. 27, 992 P.2d 1122, 1125 (Ct.App.1998) (holding that *Purkett* eliminated the *Cruz* objective verification requirement), *aff'd*, 196 Ariz. 188, 994 P.2d 395 (2000); *State v. Henry*, 191 Ariz. 283, 955 P.2d 39, 42 (Ct.App.1997) (same).

The prosecutor here claimed that Ms. V. both slept during voir dire and had a visible reaction to a statement by another prospective juror regarding the general credibility of police officers indicating she might tend to disbelieve a police officer witness. Discriminatory intent is not inherent in either of those proffered explanations. *See United States v. James*, 113 F.3d 721, 729 (7th Cir. 1997) (prosecutor's explanation that juror's body language could be interpreted as showing animosity toward the government or the defendant was race-neutral); *United States v. Rudas*, 905 F.2d 38, 41 (2d Cir.1990) ("the Government's concern about a juror's inattentiveness is a good reason for its exercising a peremptory challenge"); *United States v. Moreno*, 878 F.2d 817, 820–21 (5th Cir.1989) (prosecutor's explanation that he detected a "hostile attitude toward police officers" was race-neutral); *Commonwealth v. Kellam*, 719 A.2d 792, 798–99 (Pa.Super.Ct.1998) (no violation of equal protection where prosecutor used a peremptory strike based on his observation that a juror was sleeping during voir dire).

Accordingly, we conclude that the prosecutor met his burden of offering a race-neutral explanation for striking Ms. V., and we proceed to the third step of the *Batson* analysis.

### 3. Purposeful Racial Discrimination

At step three, the trial court must determine whether the defendant "has established purposeful discrimination." *Batson*, 476 U.S. at 98, 106 S.Ct. 1712. In doing so, the court must consider all the relevant evidence, both direct and circumstantial. *See Snyder*, — U.S. at —, 128 S.Ct. 1203; *Miller–El v. Dretke*, 545 U.S. 231, 239, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005); *Cerrone*, 854 P.2d at 191.

> In the typical peremptory challenge inquiry, the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed. There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge. As with the state of mind of a juror, evaluation of the prosecutor's state of mind based on demeanor and credibility lies "peculiarly within a trial judge's province."

*Hernandez*, 500 U.S. at 365, 111 S.Ct. 1859 (plurality opinion) (quoting in part *Wainwright v. Witt*, 469 U.S. 412, 428, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985)); *accord Snyder*, — U.S. at —, 128 S.Ct. 1203; *Miller–El I*, 537 U.S. at 339, 123 S.Ct. 1029; *see also Marion*, 941 P.2d at 291; *People v. Gardenhire*, 903 P.2d 1165, 1170 (Colo.App.1995). Because a reviewing court is not as well positioned as the trial court to make such credibility determinations, we review a trial

court's decision at step three only for clear error. *Snyder*, —— U.S. at ——, 128 S.Ct. 1203; *Miller–El I*, 537 U.S. at 339, 123 S.Ct. 1029; *Hernandez*, 500 U.S. at 364, 111 S.Ct. 1859 (plurality opinion); *Hernandez*, 500 U.S. at 372, 111 S.Ct. 1859 (O'Connor, J., concurring); *Valdez*, 966 P.2d at 590. Thus, in the absence of exceptional circumstances, we defer to the district court's finding. *Snyder*, —— U.S. at ——, 128 S.Ct. 1203; *Hernandez*, 500 U.S. at 366, 111 S.Ct. 1859 (plurality opinion); *Hernandez*, 500 U.S. at 372, 111 S.Ct. 1859 (O'Connor, J., concurring).

Defendant contends the prosecutor's stated reason that Ms. V. had "nodded off" is refuted by the record and was rejected by the court. However, though the record shows Ms. V. answered the questions she was asked, it does not affirmatively show that she remained awake and attentive throughout the entire voir dire. Nor did the court find that she had. Rather, the court stated that she "did not notice her sleeping."

■ Defendant challenges the prosecutor's second stated reason—that Ms. V. had reacted to a statement by another juror in a manner indicating possible bias against the police—on the basis that there is no independent verification of that reaction in the record and the prosecutor failed to question Ms. V. about her reaction, rendering this reason "impossible to credit." It is not necessary, however, for there to be objective verification of the prosecutor's stated reason in order for the court to credit it. *See Hernandez*, 500 U.S. at 365, 111 S.Ct. 1859 (plurality opinion) ("There will seldom be much evidence bearing on [discriminatory intent], and the best evidence often will be the demeanor of the attorney who exercises the challenge."). The district court obviously (albeit implicitly) found the prosecutor's stated reasons credible, and we cannot say on this record that the court clearly erred in doing so.

Defendant also contends that the district court erred in ruling without first giving his counsel an opportunity to rebut the prosecutor's stated reasons for striking Ms. V. Ordinarily, a defendant must be allowed the opportunity to rebut the prosecution's race-neutral explanation "by showing, for example, that it is pretext." *Valdez*, 966 P.2d at

590; *see also Craig*, 161 P.3d at 654; *Cerrone*, 854 P.2d at 191 n. 22.

Here, while the district court did not ask defendant's counsel if he had any rebuttal to offer, there is no indication in the record that defendant's counsel objected to the court's ruling or requested an opportunity to rebut the prosecutor's stated reasons. *Cf. Rudas*, 905 F.2d at 41 (where defense counsel did not indicate an intention to pursue *Batson* claim after prosecutor offered reasons for peremptory challenges, counsel appeared to acquiesce in those reasons); *State v. King*, 249 Conn. 645, 735 A.2d 267, 281 (1999) (defendant's counsel's failure to attempt to rebut the prosecutor's reason may be regarded as acquiescence by the defendant in the validity of the prosecutor's explanation); *State v. Johnson*, 930 S.W.2d 456, 461 (Mo.Ct.App. 1996) (defendant's counsel's failure to rebut the prosecutor's stated reasons failed to preserve any objection to those reasons for appellate review). Though the court should have provided defendant's counsel with an opportunity to rebut the prosecutor's stated reasons before ruling, we cannot say that defendant was prejudiced given the lack of any objection.

In sum, the prosecutor articulated race-neutral explanations for exercising a peremptory challenge on Ms. V., and our review of the record does not show that the district court clearly erred in crediting those explanations based on its implicit assessment of the prosecutor's credibility and the surrounding circumstances. Accordingly, the district court did not err in denying defendant's *Batson* challenge.

### B. Motion for Separate Trials Before Different Juries

■ Defendant next contends that the district court erred by denying his motion for separate trials before different juries and instead allowing a bifurcated trial before a single jury. Defendant claims he was thereby denied his right to a fair trial on the previous offender charges. (He does not claim he was denied his right to a fair trial on the other charges, which were tried first.) We conclude that the district court did not

abuse its discretion in denying defendant's motion.

Crim. P. 14 states, in relevant part:

If it appears that a defendant or the prosecution is prejudiced by a joinder of offenses ... or by such joinder for trial together, the court may order an election or separate trials of counts ... or provide whatever other relief justice requires.

■ A motion for separate trials before different juries is "addressed to the sound discretion of the trial court, and [the trial court's decision] will be affirmed absent a showing of an abuse of discretion and actual prejudice to the moving party." *Peltz v. People,* 728 P.2d 1271, 1275 (Colo.1986); *accord People v. Aalbu,* 696 P.2d 796, 806 (Colo.1985). To establish an abuse of discretion, the defendant must show more than the fact that separate trials might have afforded him a better chance of acquittal. The defendant must show actual prejudice, and not just the differences inherent in any trial of different offenses. *People v. Guffie,* 749 P.2d 976, 982 (Colo.App.1987); *see also People v. Pickett,* 194 Colo. 178, 183, 571 P.2d 1078, 1082 (1977); *People v. Gregory,* 691 P.2d 357 (Colo.App.1984). "The important inquiry is whether the trier of fact will be able to separate the facts and legal theories applicable to each offense." *Pickett,* 194 Colo. at 183, 571 P.2d at 1082; *accord Aalbu,* 696 P.2d at 806; *People v. Early,* 692 P.2d 1116, 1119 (Colo.App.1984).

Defendant relies heavily on *People v. Peterson,* 656 P.2d 1301 (Colo.1983), for the proposition that where a defendant is charged with a substantive offense as well as a previous offender offense, the court is required to "invoke procedural safeguards to insure a fair trial." Defendant argues that, under the particular circumstances here, only separate trials before different juries would have satisfied this requirement. We disagree.

The defendant in *Peterson* had been charged with various substantive offenses (burglary, assault, and felony menacing) as well as a previous offender offense. In order to prove the elements of the previous offender charge, the prosecution was required to introduce evidence of the defendant's previ-ous conviction for manslaughter. The supreme court recognized that under such circumstances "procedural safeguards such as separate trials *or a bifurcated procedure* should be available to ensure a fair trial." *Id.* (emphasis added).

Here, the district court employed the bifurcated procedure endorsed in *Peterson.* Nonetheless, defendant argues that his case required separate trials before different juries because, unlike the previous offense in *Peterson,* the previous offense here was the same as the substantive offenses for which he had been tried initially. In short, defendant argues his bifurcated trial resulted in substantial prejudice to him because he was on trial for drug possession and the previous conviction introduced to prove the previous offender charge was also for drug possession. We are not persuaded.

The jury found in the first trial that defendant had possessed a deadly weapon. In the second trial, the only additional element the prosecution was required to prove to establish defendant's guilt on the previous offender charges was that defendant had been previously convicted of a felony. *See* § 18–12–108(1). This required nothing more than introducing court-certified documents showing that defendant had been previously convicted of a felony and testimony and documents matching defendant's fingerprints and photograph to the fingerprint cards and photograph used in the previous case. The fact that the previous offense (possession of a schedule II controlled substance) happened to be the same as those offenses tried in the first trial was not relevant, and therefore not a focus of the prosecution's presentation (though the nature of the previous offense was mentioned). Moreover, the court instructed the jury that it must consider the evidence pertaining to each charge separately, and that its verdict as to one offense should not influence its decision as to any other offense. We are not persuaded that the similarity of the previous felony and the most recent charges is a fact that might cause the jury to render a verdict on an improper basis, essentially disregarding the court's instruction.

Defendant argues that the district court also erred in denying his motion because the bifurcated proceeding impaired his right to conduct an adequate voir dire on the previous offender charges. Again, we disagree.

"[T]he purpose of *voir dire* examination is to enable counsel to determine whether any prospective jurors are possessed of beliefs that would cause them to be biased in such a manner as to prevent the defendant from obtaining a fair and impartial trial." *People v. Martinez,* 24 P.3d 629, 632 (Colo.App.2000). "A trial court's decisions concerning the scope of voir dire and the propriety of questions put to the jury will not be disturbed absent an abuse of discretion." *People v. Harlan,* 8 P.3d 448, 462 (Colo.2000).

Contrary to defendant's contention, the district court did not limit his counsel's scope of questioning during voir dire, and certainly never prohibited questions to the prospective jurors regarding previous offenses. Defendant's counsel's failure to ask the potential jurors about their attitudes regarding repeat offenders was a strategic choice. We recognize that circumstances, such as bifurcated trials, may call for counsel to make difficult decisions regarding what information to disclose to potential jurors and what questions to ask. However, were we to agree with defendant's reasoning, bifurcated trials would never be permissible because voir dire in any such proceedings necessarily entails a judgment call by counsel as to what to ask that might be relevant (or more relevant) in the second trial. Bifurcated proceedings, however, have been expressly endorsed by the supreme court as a mechanism for avoiding prejudice to defendants in circumstances such as those in this case. *Peterson,* 656 P.2d at 1305. Ultimately, the question is whether the procedure employed by the district court deprived defendant of his right to a fair and impartial jury. His claim of prejudice is speculative. Indeed, he identifies no specific question that he desired to ask the potential jurors, but refrained from asking. And, as noted, he was not in fact prohibited from asking them any questions.

In sum, we conclude the district court did not abuse its discretion in denying defendant's motion for separate trials before different juries.

### C. Motion to Waive Jury Trial

Defendant also contends the district court erred by denying his motion to waive his right to a jury trial. We are not persuaded.

A defendant does not have an absolute constitutional right to waive his right to a jury trial. *People v. District Court,* 843 P.2d 6, 9 (Colo.1992). The People have a limited statutory right to object to such a waiver. § 16–10–101, C.R.S.2007; *People v. District Court,* 843 P.2d at 9–11. "[T]he People may refuse to consent to the defendant's request to waive a jury trial, so long as that refusal comports with a defendant's due process rights as provided in the United States and Colorado Constitutions." *People v. District Court,* 953 P.2d 184, 186 (Colo. 1998).

We review a district court's decision to deny a defendant's motion to waive a jury trial for an abuse of discretion. *See People v. District Court,* 843 P.2d at 11.

Defendant claims the district court forced him to "proceed to trial with an unfair jury by denying his motion to waive his right to a jury trial." The jury was "unfair," according to defendant, because it had found him guilty of the controlled substance offenses before it was asked to determine his guilt on the previous offender charges. However, we have concluded that defendant was not prejudiced by the bifurcated trial process employed by the court. It follows that the district court did not abuse its discretion in denying defendant's motion to waive a jury trial.

### D. Sentencing

Finally, defendant contends that the district court erred in construing the applicable sentencing statutes as requiring a minimum sentence of sixteen years imprisonment on his controlled substance convictions, and that the sixteen-year sentence violates the Supreme Court's holdings in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and *Blakely v. Washing-*

*ton*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). We disagree with both contentions.

 "A trial court has broad discretion over sentencing decisions, and will not be overturned absent a clear abuse of that discretion." *Lopez v. People*, 113 P.3d 713, 720 (Colo.2005). A trial court necessarily abuses its discretion where it misconstrues or misapplies the law. *People v. Wadle*, 97 P.3d 932, 936 (Colo.2004). We review issues of statutory interpretation de novo. *Hernandez v. People*, 176 P.3d 746, 751 (Colo. 2008). Likewise, where a defendant raises a constitutional challenge to a sentencing determination, we review that challenge de novo. *Lopez*, 113 P.3d at 720.

Defendant argues that the district court incorrectly applied the sentence enhancement for committing an offense while on parole, section 18–1.3–401(8)(a)(II), C.R.S. 2007, to the controlled substance convictions because those convictions were already enhanced pursuant to section 18–18–405(1) and (2)(a)(I)(B). He argues that the legislature, in providing that a controlled substance offense is elevated from a class four felony to a class two felony if committed subsequent to a prior similar controlled substance conviction, thereby provided for a specific sentence enhancement that is to be applied to the exclusion of all other sentence enhancements. We disagree.

 We must interpret sentencing statutes so as to give effect to the legislature's intent. *Martinez v. People*, 69 P.3d 1029, 1031 (Colo.2003). "The legislature is presumed to intend that the various parts of a comprehensive scheme are consistent with and apply to each other, without having to incorporate each by express reference in the other statutory provisions." *Id.* at 1033.

In *People v. Cordova*, —— P.3d ——, 2007 WL 1558373 (Colo.App. No. 05CA0515, May 31, 2007), the defendant was convicted of unlawful distribution and sale of a schedule II controlled substance. Because of his previous drug-related convictions, his offense was increased from a class three felony to a class two felony. The district court sentenced the defendant to the maximum term of imprisonment in the presumptive range for a class two felony, twenty-four years. The People argued on appeal that the district court erred in refusing to apply a mandatory habitual criminal sentence enhancement that required a sentence of four times the maximum of the presumptive range. The defendant countered that sentence enhancements could not be stacked on top of one another in the manner urged by the People, relying on *People v. Bastian*, 981 P.2d 203 (Colo.App. 1998). A division of this court agreed with the People, holding:

> Here, unlike in *Bastian*, [the defendant's] drug charges were increased to a higher felony classification because he had previously been convicted of a drug offense. Thus, unlike in *Bastian*, the increase in felony classification did not elevate [the defendant's] sentence beyond the presumptive range.
>
> Where two sentencing statutes act to increase the presumptive sentencing range, those statutes should be applied independently and not to the exclusion of one another. . . . Here, [the defendant's] prior drug felony acted to *reclassify* the drug charges as class two felonies. This increase in felony classification cannot be used to the exclusion of the habitual criminal statute.

*Cordova*, —— P.3d at —— (citation omitted) (emphasis added).

Here, as in *Cordova*, defendant was convicted of two counts of possessing a schedule II controlled substance, which is ordinarily classified as a class four felony. However, because of his previous drug conviction, the offenses were *reclassified* as class two felonies. Section 18–18–405(1)(a) and (2)(a)(I)(B) did not enhance defendant's sentence beyond the presumptive range: they established the offenses as a higher level of felony. Accordingly, because the controlled substance offenses were reclassified as class two felonies, it was proper for the district court to apply the sentence enhancer of section 18–1.3–401(8)(a)(II).

Defendant relies on *People v. Andrews*, 871 P.2d 1199 (Colo.1994), and *People v. Willcoxon*, 80 P.3d 817 (Colo.App.2002), for the proposition that where the legislature intends a separate punishment specific to an

offense, any generally applicable sentence enhancements are inapplicable to that offense. Those cases are distinguishable.

*Andrews* and *Willcoxon* held that the language of the felony escape statute and the second degree assault statute, respectively, already provided offense-specific sentence enhancements—that the sentence would run consecutively to the sentence for the underlying felony. Therefore, the courts found that to apply both the specific and the general enhancements would be inconsistent with legislative intent. *Andrews,* 871 P.2d at 1203; *Willcoxon,* 80 P.3d at 822.

In this case, in contrast, section 18–18–405(1)(a) and (2)(a)(I)(B) do not constitute an offense-specific sentence enhancement. Rather, as previously discussed, they reclassify the offense as a higher level of felony. Therefore, like *Bastian, Andrews* and *Willcoxon* are inapposite.

We also reject defendant's contention that the district court ran afoul of *Apprendi* and *Blakely* by applying the general aggravated sentence enhancement based on his counsel's admission that he was on parole at the time he committed the controlled substance offenses. "[T]he fact that defendant was on parole or probation is inextricably linked to his prior conviction and thus falls within the prior conviction exception" to the rule of *Apprendi* and *Blakely. People v. Montoya,* 141 P.3d 916, 922 (Colo.App.2006); *accord People v. Huber,* 139 P.3d 628, 633 (Colo.2006) ("Because a defendant's sentence to probation or supervision can be found in the judicial record, we conclude that a trial court may properly consider this fact without violating the defendant's *Blakely* rights."); *see also DeHerrera v. People,* 122 P.3d 992, 994 (Colo.2005) (aggravated sentence based on "[p]rior conviction facts are *Blakely*-exempt in large part because these facts have been determined by a jury beyond a reasonable doubt").

The judgments and sentence are affirmed.

Judge CASEBOLT and Judge RUSSEL concur.