The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Michael P. O'SHAUGHNESSY,
Defendant–Appellant.

No. 06CA1228.

Colorado Court of Appeals,
Div. VII.

April 15, 2010.

John W. Suthers, Attorney General, Jennifer A. Berman, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Elisabeth Hunt White, Boulder, Colorado, for Defendant–Appellant.

Opinion by Judge MILLER.

Defendant, Michael P. O'Shaughnessy, appeals the judgment of conviction and consecutive sentences entered on jury verdicts finding him guilty of attempted first degree murder with a deadly weapon, attempted aggravated robbery, second degree assault, false imprisonment, reckless endangerment, and a violent crime sentence enhancer. We affirm the judgment, vacate the sentence in part, and remand the case for resentencing.

## I. Background

The victim testified that defendant approached her with a hunting knife as she finished loading groceries into her van and told her to get inside. She sat down in the driver's seat, but turned so that she could kick him as he began stabbing her with the knife. Defendant told the victim she was going to die, and stabbed her four times in the throat, once in the leg, and once on her hand. He then demanded money. She said she did not have any money and turned to look for her purse; when she turned back, defendant was gone. The entire incident took place in under one minute.

Defendant contends that the trial court erred in denying his *Batson* objection when the prosecution struck three Hispanic members of the venire; that the trial court should have instructed the jury on the affirmative defense of abandonment with regard to the crimes of attempted murder and attempted aggravated robbery; that his convictions of attempted first degree murder and second degree assault must merge under principles of double jeopardy; and that the trial court erred in imposing consecutive sentences. We agree only with regard to sentencing.

## II. Analysis

### A. *Batson* Objection

We reject defendant's contention that the trial court erred in denying his *Batson* objection to the prosecution's use of peremptory strikes against three Hispanic members of the venire.

■ Under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the Equal Protection Clause of the Fourteenth Amendment forbids a prosecutor to exclude potential jurors solely on account of their race or on the assumption that minority jurors will not impartially consider the prosecution's case against a member of their own race. *Batson*, 476 U.S. at 89, 106 S.Ct. 1712. *Batson* outlines three steps for evaluating claims of racial discrimination in jury selection: (1) the defendant must establish a prima facie case of discrimination; (2) the prosecution must give a race-neutral reason for its peremptory strike; and (3) the court must determine whether the defendant has proved discrimination by a preponderance of the evidence. *Id.* at 93–98, 106 S.Ct. 1712; *Valdez v. People*, 966 P.2d 587, 589 (Colo.1998).

■ Defendant challenges the trial court's application of step three only. Typically, the decisive question at this step is "whether counsel's race-neutral explanation for a peremptory challenge should be believed." *Hernandez v. New York*, 500 U.S. 352, 365, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991) (plurality opinion); *accord id.* at 375, 111 S.Ct. 1859 (O'Connor, J., concurring, joined by Scalia, J.) (if "the trial court believes the prosecutor's nonracial justification, and that finding is not clearly erroneous, that

is the end of the matter"). As evidence bearing on that issue is likely to be limited, the best evidence often will be the demeanor of the attorney who exercises the challenge. As with the state of mind of a juror, evaluation of the prosecutor's state of mind based on demeanor and credibility lies "peculiarly within a trial judge's province."

*Id.* at 365, 111 S.Ct. 1859 (quoting *Wainwright v. Witt,* 469 U.S. 412, 428, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985)); *see also Snyder v. Louisiana,* 552 U.S. 472, 477, 128 S.Ct. 1203, 170 L.Ed.2d 175 (2008). "Because a reviewing court is not as well positioned as the trial court to make such credibility determinations, we review a trial court's decision at step three only for clear error." *People v. Robinson,* 187 P.3d 1166, 1173–74 (Colo.App. 2008). Thus, in the absence of exceptional circumstances, we defer to the trial court's finding. *Snyder,* 552 U.S. at 477, 128 S.Ct. 1203; *Robinson,* 187 P.3d at 1173–74.

### 1. Lack of Specific Findings Under Step Three

As an initial matter, we reject defendant's argument that the trial court failed to make any findings beyond step two of the *Batson* inquiry. After the prosecutor offered his reasons for the strikes, the trial court asked defense counsel whether he cared to offer rebuttal. Following defense counsel's remarks, the court stated:

[T]he Court at this point in time is satisfied that the prosecution has articulated with respect to [Prospective Juror S] there was a race-neutral reason for her excusal.... Whether it's right or wrong, I think it's a race-neutral reason. And so the Court is going to find it to be a valid reason for her excusal.

Likewise, the Court's satisfied that the prosecution articulated reasons for [Prospective Juror M] and [Prospective Juror T's] excusal.... Here again, impressions are subjective but it's a race-neutral reason. So I note the objection. I overrule it.

Defendant contends that the trial court's findings merely acknowledge that the prosecution met its burden at step two and that

the trial court was required to rule explicitly on whether the race-neutral reasons given for the strikes were believable. We disagree. In *Robinson,* the trial court ruled on a *Batson* objection using similar language: "The Court finds that ... the D.A. has stated an articulable non-racial [basis] for his peremptory, which is the standard. So the motion for, I guess, reinstating Ms. [V.] into the jury is denied." 187 P.3d at 1171. A division of this court affirmed, noting that "[t]he district court obviously (albeit implicitly) found the prosecutor's stated reasons credible." *Id.* at 1174. Based on our review of the record before us, we reach the same conclusion here.

### 2. Specific Objections

#### a. Prospective Juror T

■ The prosecutor explained his peremptory strike of Prospective Juror T as follows:

My ... race-neutral basis for excusing [Prospective Juror T] is throughout my voir dire she was rolling her eyes, indicating that she wasn't too happy to be here which was confirmed when I did excuse her, her actions.

In considering this statement, the trial judge noted that although he could not see Prospective Juror T during voir dire, impressions from body language are subjective.

■ As the Supreme Court recently held, *Batson* does not require the rejection of a demeanor-based explanation for a peremptory challenge merely because the trial judge did not personally observe the relevant aspect of the prospective juror's demeanor. *Thaler v. Haynes,* — U.S. ——, —— - ——, 130 S.Ct. 1171, 1174–75, 175 L.Ed.2d 1003 (2010). The Court thus rejected the argument, raised here by defendant, that its decision in *Snyder* requires a trial court to "specifically credit" a prosecutor's demeanor-based reason to overcome a *Batson* objection.

In *Snyder,* the prosecutor gave two ostensibly race-neutral reasons for a peremptory strike, one based on demeanor and the other not. 552 U.S. at 478–479, 128 S.Ct. 1203. The trial court denied defense counsel's *Batson* objection without stating which of the two reasons it considered valid. On review,

the Supreme Court held that "deference is especially appropriate where a trial judge has made a finding that an attorney credibly relied on demeanor in exercising a strike." *Id.* at 479, 128 S.Ct. 1203. However, because the record was unclear as to which of the two reasons the trial court had credited, and because the Supreme Court found the second reason to be a pretext, the Court held that it could not presume the trial court had ruled on a proper basis. *Id.* at 485, 128 S.Ct. 1203.

Here, in contrast, the only reason the prosecutor gave for striking Prospective Juror T was based on her demeanor. Thus, there is no question that the trial court's acceptance of the prosecutor's explanation is entitled to deference on review. It is immaterial, then, that the trial judge did not see Prospective Juror T roll her eyes, and nothing in the record contradicts the prosecutor's statements about her demeanor. We therefore conclude that it was not clear error for the trial court to accept the prosecutor's race-neutral explanation for the peremptory strike of Prospective Juror T.

### b. Prospective Juror S

■ The prosecutor stated that he struck Prospective Juror S because

she works for Arapahoe House. She does a lot of counseling. She's sympathetic to people. I'm assuming she may be sympathetic to people that are on drugs and there may be testimony elicited in this case that the defendant may have been under the influence of drugs which might mean she might not hold him responsible for his behavior.

Defense counsel argued that several white jurors not challenged by the prosecution were "of the same background," and pointed to one juror who was a therapist with a master's degree in social work, one who headed an early childhood education program, one who was a speech language pathologist, and another who was a speech therapist. Defense counsel asserted that these jurors were like Prospective Juror S because they "may have empathetic situations."

On appeal, defendant contends that the prosecution's failure to strike jurors who were similarly situated to Prospective Juror S and its failure to question her specifically about whether her background would make her unduly sympathetic to a defendant who was on drugs requires us to conclude that the reason given for her excusal was pretextual. We disagree.

The Supreme Court has said:

If a prosecutor's proffered reason for striking a [minority] panelist applies just as well to an otherwise-similar [nonminority] who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at *Batson's* third step.

*Miller–El v. Dretke,* 545 U.S. 231, 241, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005). In *Miller–El,* the prosecution stated that it struck a black juror in a capital case because he had said he could not impose the death penalty if he thought the defendant could be rehabilitated and that any person could be rehabilitated through religion. *Id.* at 243, 125 S.Ct. 2317. The Court concluded this was a mischaracterization of the juror's statements, and several unchallenged white jurors had expressed far more doubt about their ability to impose the death penalty. *Id.* at 244–47, 125 S.Ct. 2317. Because the similarities between the black juror and the white jurors were strong, and the differences were insignificant, the Supreme Court concluded that the prosecution's explanation for the strike could not reasonably be accepted. *Id.* at 247, 125 S.Ct. 2317.

Here, the similarities between Prospective Juror S and the unchallenged nonminority jurors are more tenuous. Defense counsel stated that the nonminority jurors "may have empathetic situations," but did not allege that any of them might be "sympathetic to people who are on drugs." The record does not indicate that any of the nonminority jurors worked with people who use drugs, and at least one of them worked with young children. We therefore conclude that the comparison of Prospective Juror S to unchallenged white jurors does not indicate pretext or a discriminatory intent by the prosecutor.

■ Nor are we persuaded that the prosecution's failure to question Prospective Juror S about whether she would be inclined to

empathize with a defendant who was on drugs rises to the level of "exceptional circumstances" required to establish clear error by the trial court.

■ The failure by a prosecutor to inquire into an area of claimed concern before exercising a peremptory strike on that basis can be evidence of pretext. *See Miller–El*, 545 U.S. at 246, 250 n. 8, 125 S.Ct. 2317; *People v. Collins*, 187 P.3d 1178, 1183 (Colo. App.2008). In *Miller–El*, after defense counsel pointed out that the prosecutor's stated reason for striking a black juror mischaracterized the juror's responses during voir dire, the prosecutor suddenly claimed another reason for the strike: that the juror's brother had a criminal history. *Miller–El*, 545 U.S. at 246, 125 S.Ct. 2317. In light of the prosecutor's earlier misrepresentation of the juror's statements, the "pretextual timing" of the substituted reason, testimony by the juror indicating he was not close to his brother, and the prosecutor's failure to question the juror about the influence his brother's history might have had on him, the Supreme Court concluded that the substituted reason was mere makeweight. *Id.*

In *Collins*, the prosecutor gave several reasons for striking a black juror from the venire, including that (1) she "didn't respond to anything"; (2) despite having reported being a victim of domestic violence on her jury questionnaire, she failed to respond when he "asked if anybody had any relatives or friends that had been accused of a crime"; and (3) she was a nurse and would therefore be sympathetic to defendants. 187 P.3d at 1183. These reasons were flatly refuted by the record; the juror had in fact answered all questions asked of her, the prosecutor had not asked whether any potential juror had a friend or relative who had been accused of a crime, and the juror was not a nurse but a program assistant at a hospital. *Id.* Moreover, the prosecutor did not ask the juror about the details of her domestic violence case or inquire into her profession. *Id.* A division of this court held that the prosecutor's failure to inquire into these areas of supposed concern suggested pretext, and noted that *"[o]f even greater significance* is the fact the prosecutor accepted three white

health care workers as jurors, including a nurse." *Id.* (emphasis added).

Here, each member of the venire was asked to give a brief self-introduction, including a description of his or her employment and educational background. Prospective Juror S stated that she was employed at Arapahoe House (an alcohol and drug rehabilitation center) and that she was taking classes for certification in addiction counseling. The prosecutor later asked if she did therapy work as part of her certification process, and she answered that she worked as a phone counselor. The prosecutor continued:

> [PROSECUTOR]: A phone counselor. Someone might call you—Arapahoe House is basically—it's an alcohol rehabilitation, drug rehabilitation?
>
> [PROSPECTIVE JUROR S]: (Nods.)
>
> [PROSECUTOR]: So you do counseling over the phone; is that correct?
>
> [PROSPECTIVE JUROR S]: That's correct.

Although he did not specifically ask Prospective Juror S whether her experience as a phone counselor at a drug rehabilitation center would influence her ability to be impartial toward a defendant who was on drugs, the prosecutor's questions suggest that he was considering that as a possible source of bias. Thus, unlike in *Miller–El* and *Collins*, there was at least some questioning by the prosecutor regarding the claimed concern. In each of those cases, moreover, the prosecutor's failure to inquire was one of many factors evidencing pretext. Here, considering the record of voir dire as a whole, we do not discern clear error in the trial court's denial of defendant's *Batson* objection as to Prospective Juror S.

### c. Prospective Juror M

■ As an initial matter, we reject the People's contention that defendant waived the right to appeal the trial court's ruling on his *Batson* objection regarding Prospective Juror M by failing to offer a rebuttal argument after the prosecution proffered its race-neutral reason for the strike.

■ Although a defendant must be afforded the opportunity to rebut the prosecutor's proffered race-neutral reasons before a trial court may make its final determination, *see People v. Gabler*, 958 P.2d 505, 507 (Colo. App.1997), neither *Batson* itself nor Colorado law requires rebuttal to preserve the issue for review. *See Ford v. Georgia*, 498 U.S. 411, 423, 111 S.Ct. 850, 112 L.Ed.2d 935 (1991) (states may determine procedures for implementing *Batson* standard); *contra State v. Johnson*, 930 S.W.2d 456, 461 (Mo. Ct.App.1996) *(Batson* challenge not preserved for appellate review where defense counsel failed to rebut prosecutor's proffered race-neutral reasons for strike).

In *Robinson*, a division of this court held that the district court should have provided the defendant's counsel with an opportunity to rebut the prosecutor's reasons before ruling, but found that the defendant was not prejudiced because his counsel did not object to the ruling or request an opportunity for rebuttal. 187 P.3d at 1174. The division cited decisions from other jurisdictions holding that a court *may* regard defense counsel's failure to rebut as acquiescence in the validity of the prosecution's explanation. *Id.* (citing *United States v. Rudas*, 905 F.2d 38, 41 (2d Cir.1990); *State v. King*, 249 Conn. 645, 735 A.2d 267, 281 (1999)). None of these courts, however, declined review on the basis of defense counsel's failure to provide rebuttal.

■ Under *Batson*, after the prosecution presents facially race-neutral reasons for exercising a peremptory strike, "[t]he trial court then will have the duty to determine if the defendant has established purposeful discrimination." 476 U.S. at 98, 106 S.Ct. 1712. This language makes clear that the defendant bears the burden of persuasion. However, nothing in *Batson* or its progeny suggests that the defense bears the further burden of coming forward with facts or arguments in addition to those brought out in its prima facie case merely because the prosecution has met its burden at step two. Only the trial court has an affirmative duty to act under step three; it follows that the defense may rest on the prima facie case made at step one if it so chooses.

■ Fundamentally, a party must present the trial court "with an adequate opportunity to make findings of fact and conclusions of law on any issue before we will review it." *People v. Melendez*, 102 P.3d 315, 322 (Colo.2004). In the case of a *Batson* challenge, that objective is met without requiring rebuttal by the defense. Here, therefore, we conclude that we may properly review the prosecution's strike of Prospective Juror M.

■ Nevertheless, defendant's contention that the trial court committed clear error in denying his *Batson* challenge with respect to Prospective Juror M fails. During voir dire, Prospective Juror M stated that he had "a real problem judging anyone" and that he was not sure if he could find someone guilty or not guilty. He subsequently reiterated that he found it difficult to judge anyone. Prospective Juror M also displayed confusion when the prosecutor asked whether he could find defendant *not* guilty if the prosecutor failed to present any evidence at all, first responding that he did not think so, then that he could. The prosecutor cited these responses as the basis for his peremptory strike.

Defendant argues on appeal that, while Prospective Juror M said he had a hard time judging people, he did not say affirmatively that he could not do so. He further contends that Prospective Juror M's initial response that he could find defendant guilty if presented with no evidence, if it was not merely a misunderstanding, inured to the benefit of the prosecution. Therefore, defendant argues, Prospective Juror M's responses indicated no bias against the prosecution and were not sufficient to support the trial court's ruling.

■ However, *Batson* does not require a showing by the prosecutor of actual bias on the part of a prospective juror. *See People v. Cerrone*, 854 P.2d 178, 189 (Colo.1993) (state's explanation of peremptory strike under *Batson* need not rise to level justifying challenge for cause). Rather, the defendant bears the burden of proving purposeful discrimination by the prosecutor in exercising the strike. *Robinson*, 187 P.3d at 1172.

And, as discussed above, the trial court properly could have considered defendant's failure to rebut as acquiescence in the prosecution's explanation. Based on our review of the record, we perceive no clear error by the trial court in denying defendant's *Batson* objection as to Prospective Juror M.

While we conclude the trial court did not err in denying defendant's *Batson* objections, we emphasize the importance of the court expressly allowing a defendant's counsel an opportunity to rebut a prosecutor's stated reason for a peremptory challenge and of the court making express findings at step three of the analysis that are clearly distinct from its findings at step two. *See People v. Montez,* —— P.3d ——, ——, 2010 WL 961652, *8–10 (Colo.App. No. 07CA0139, Mar. 18, 2010) (Taubman, J., concurring).

### B. Abandonment Instruction

█ We also reject defendant's contention that he was entitled to have the jury instructed on the affirmative defense of abandonment as to the charges of attempted murder and attempted robbery.

█ A defendant may assert an affirmative defense to a charge under the criminal attempt statute based on abandonment of his or her effort to commit the crime under circumstances manifesting the complete and voluntary renunciation of criminal intent. § 18–2–101(3), C.R.S.2009. This defense is derived from the Model Penal Code, section 5.01(4). *People v. Gandiaga,* 70 P.3d 523, 528 (Colo.App.2002). Another division of this court has stated:

> [E]ven though, in a strict analytical sense, the crime of attempt is complete once the actor intentionally takes a substantial step towards the commission of the crime, nevertheless, the defense of abandonment is present if he thereafter voluntarily renunciates his criminal intent.

*People v. Johnson,* 41 Colo.App. 220, 222, 585 P.2d 306, 308 (1978). A "substantial step" requires an overt act beyond mere preparation; it need not constitute the last proximate act necessary to completion of the substantive crime. *See People v. Goff,* 187 Colo. 57, 58, 530 P.2d 512, 513 (1974).

█ The abandonment defense may therefore apply at various stages, both early and late, in the commission of an attempted crime. *Gandiaga,* 70 P.3d at 528. There comes a point, however, when it is too late for the actor to withdraw from a criminal attempt. The abandonment defense is not available, for example, once the defendant has put in motion forces that he or she is powerless to stop. *Id.* (citing Model Penal Code and Commentaries § 5.01 cmt. 8 at 360 (1985)). In *Gandiaga,* a division of this court held that the abandonment defense was not available when the defendant's cohort, at the defendant's command, pointed a gun at the victim's head and pulled the trigger, but the gun malfunctioned. *Id.*

Clearly it is too late to claim abandonment of attempted murder when the defendant has injured the victim. *See* W. LaFave & A. Scott, *Substantive Criminal Law* § 11.5(b), at 249 (2d ed.2003) ("it would hardly do to excuse the defendant from attempted murder after he had wounded the intended victim"); R. Perkins & R. Boyce, *Criminal Law* 656 (3d ed. 1982) ("Attempted murder cannot be purged after the victim has been wounded, no matter what may cause the plan to be abandoned."); *see also Ramirez v. State,* 739 P.2d 1214, 1217 (Wyo.1987) (under statute similar to section 18–2–101(3), defendant charged with attempted murder "passed beyond the point at which abandonment was legally possible" by inflicting the first of nine stab wounds, even though he later called an ambulance).

Here, the undisputed evidence showed that defendant ended his attack on the victim only after stabbing her in the throat, leg, and hand. Defendant therefore was not entitled to have the jury instructed on the defense of abandonment with respect to the attempted murder charge.

Neither do the facts admit of an abandonment defense to the charge of attempted aggravated robbery. Under sections 18–4–301 and 18–4–302(1)(b), C.R.S.2009, a person is guilty of aggravated robbery if during the act of taking anything of value from the person or presence of another he or she knowingly wounds the victim with a deadly weapon or puts the victim in reasonable fear

of death or bodily injury. We hold that, as with attempted murder, the time has passed to claim abandonment of an attempted aggravated robbery after the defendant has injured the victim. Here, defendant stabbed the victim with a knife and asked for money. The defense of abandonment therefore was no longer available.

### C. Merger

■ Defendant argues that his convictions for attempted first degree murder and second degree assault should merge because they were both based on his use of a deadly weapon. We disagree.

■ The Double Jeopardy Clauses of both the United States and Colorado Constitutions generally prohibit multiple punishments for greater and lesser included offenses. U.S. Const. amend. V; Colo. Const., art. II, § 18; *People v. Leske*, 957 P.2d 1030, 1035 (Colo.1998). An accused may be convicted of multiple offenses arising out of the same transaction, but if one offense is included in the other, the offenses merge. § 18–1–408, C.R.S.2009; *see also Leske*, 957 P.2d at 1035–36; *People v. Torres*, 224 P.3d 268, 275 (Colo.App.2009).

■ "We review de novo whether merger applies to criminal offenses because it is an issue of statutory interpretation." *Torres*, 224 P.3d at 275. One offense is included in another if the statutory elements of the greater offense necessarily establish all of the elements of the lesser offense. *Leske*, 957 P.2d at 1036; *Torres*, 224 P.3d at 275–76.

Defendant argues that the following two offenses should merge:

● Attempted first degree murder after deliberation, the elements of which are that the defendant:
 ● after deliberation and with the intent to cause the death of a person other than himself, § 18–3–102(1)(a),
 ● engaged in conduct constituting a substantial step toward causing the death of that person, § 18–2–101.
● Second degree assault with a deadly weapon under section 18–3–203(1)(b), the

elements of which are that the defendant:
● with intent to cause bodily injury to another person
● caused such injury
● by means of a deadly weapon.

■ We analyze questions of merger by comparing the statutory elements of the offenses, not whether they were proved by the same evidence at trial. *Leske*, 957 P.2d at 1036. If each offense necessarily requires proof of at least one additional fact which the other does not, this "strict elements test" is not satisfied and we presume that the legislature intended to authorize punishment for both offenses. *Id.*

Here, the crime of attempted first degree murder requires proof that the accused engaged in conduct constituting a substantial step toward causing the death of another person. This is not an element of second degree assault under section 18–3–203(1)(b). Conversely, the crime of second degree assault with a deadly weapon requires, among other things, proof that the accused caused bodily injury to another person. This is not an element of attempted first degree murder under sections 18–2–101 and 18–3–102(1)(a). Because each of these offenses requires proof of at least one element not contained in the other, the offenses do not merge.

Defendant argues that his conviction of a violent crime sentence enhancer under section 18–1.3–406(2)(a)(I)(A), which increases the minimum sentence for certain crimes when the defendant uses a deadly weapon, requires a different result because the use of a deadly weapon becomes an element of the underlying offense, in this case the attempted murder charge. Even if that were so, the two offenses would not merge because of the bodily injury element of the second degree assault offense, as just discussed. Moreover, divisions of this court have repeatedly rejected defendant's argument, and we agree with those decisions. *See People v. Baker*, 178 P.3d 1225, 1234 (Colo.App.2007); *People v. Ramirez*, 140 P.3d 169, 170–71 (Colo.App. 2006); *People v. Hogan*, 114 P.3d 42, 57–58 (Colo.App.2004).

### D. Sentencing

 We agree with defendant and the People that the trial court erred in imposing consecutive sentences on his convictions for attempted first degree murder, second degree assault, and attempted aggravated robbery.

A trial court's decision to impose consecutive sentences is reviewed for abuse of discretion. *People v. Bass*, 155 P.3d 547, 554 (Colo.App.2006). Section 18–1–408(3), C.R.S. 2009, mandates concurrent sentences for multiple offenses arising from the same conduct that are supported by identical evidence. However, "[a] person convicted of two or more separate crimes of violence arising out of the same incident shall be sentenced for such crimes so that sentences are served consecutively rather than concurrently." § 18–1.3–406(1)(a), C.R.S.2009. Crimes of violence are "separate" if not based on identical evidence; thus, the evidence on which the convictions were based determines whether consecutive sentences may be imposed. *People v. Jurado*, 30 P.3d 769, 773 (Colo.App.2001).

Here, the trial court imposed consecutive sentences for the offenses of attempted murder, attempted aggravated robbery, and second degree assault. However, all three offenses were based on identical evidence and occurred in a single criminal episode lasting less than sixty seconds. We therefore conclude that the trial court erred in imposing consecutive sentences.

Accordingly, we remand the case to the trial court for resentencing of defendant to concurrent sentences on the convictions of attempted murder, attempted aggravated robbery, and second degree assault.

### III. Conclusion

The judgment is affirmed, the sentence is vacated insofar as the terms are consecutive, and the case is remanded for resentencing in accordance with the views expressed in this opinion.

Judge J. JONES and Judge NIETO * concur.