Colorado Court of Appeals Opinions || July 30, 2015


Colorado Court of Appeals -- July 30, 2015
2015 COA 101. No. 10CA2481. People v. DeGreat.



 
 
 
 COLORADO COURT OF APPEALS

 
 2015 COA 101

 
 



 Court of Appeals No. 10CA2481
 Arapahoe County District Court No. 08CR1289
 Honorable Elizabeth A. Weishaupl, Judge
 Honorable Kurt A. Horton, Judge


 The People of the State of Colorado,

 Plaintiff-Appellee,

 v.

 Edward Kevin DeGreat,

 Defendant-Appellant.


 JUDGMENT AFFIRMED IN PART, REVERSED IN PART,
 AND CASE REMANDED WITH DIRECTIONS

 Division V
 Opinion by JUDGE DUNN
 RomÃ¡n and Miller, JJ., concur

 Announced July 30, 2015


 Cynthia H. Coffman, Attorney General, Kevin E. McReynolds, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

 Douglas K. Wilson, Colorado State Public Defender, Jason C. Middleton, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

 Â 


 Â¶1Â Â Â Â Â Â Â  Defendant, Edward Kevin DeGreat, appeals the judgment of conviction entered on jury verdicts finding him guilty of aggravated robbery, second degree assault â reckless, and a crime of violence count. DeGreat contends that the trial court erred in (1) rejecting his tendered jury instruction on self-defense as an affirmative defense to aggravated robbery; (2) denying his Batson challenge; (3) failing to sua sponte strike testimony that he rejected a plea deal; and (4) denying his motion to suppress telephone calls made from the jail. Because we conclude that DeGreat was entitled to a self-defense instruction in connection with the aggravated robbery charge, we reverse the judgment of conviction for aggravated robbery and the related crime of violence count. The judgment is otherwise affirmed.

 
 I. Procedural Background
 
 Â¶2Â Â Â Â Â Â Â  DeGreat was charged with attempted second degree murder, first degree assault, aggravated robbery, and theft. The charges arose from an altercation with a taxi cab driver over the fare, which culminated in DeGreat stabbing and wounding the driver. DeGreat did not deny stabbing the driver or failing to pay the fare, insteadÂ defending on a theory of self-defense. The jury acquitted DeGreat of attempted second degree murder, first degree assault, and theft. But the jury found DeGreat guilty of aggravated robbery, the lesser included offense of second degree assault â reckless, and a crime of violence count.[1]


 
 II. Affirmative Defense Instructions
 
 Â¶3Â Â Â Â Â Â Â  DeGreat contends that, given the unique facts presented, he was entitled to a jury instruction on self-defense as an affirmative defense to aggravated robbery. We agree.
 
 A. The Altercation
 
 Â¶4Â Â Â Â Â  At trial, it was undisputed that DeGreat and two neighbors shared a cab ride home on the night of the altercation. When they reached their destination, the two neighbors left, leaving DeGreat in the front seat. What transpired next was contested.
 
 Â¶5Â Â Â Â Â Â Â  According to DeGreat, when he attempted to pay the cab fare, he discovered he was a few dollars short. DeGreat testified that he told the cab driver he would get the full amount from his apartment, and gave the driver his identification card (ID) asÂ collateral. DeGreat testified that the driver put the ID in his pocket, made a phone call, locked DeGreat in the cab, and told DeGreat that he had called the police.


 
 Â¶6Â Â Â Â Â Â Â  DeGreat testified that he jumped into the back seat to try and exit through the back doors. He further testified that the cab driver then got out of the car and, after DeGreat pleaded with him, unlocked the doors. DeGreat stated that when he got out of the cab, he ignored the driverâs order to stay put and started towards his apartment to retrieve the full fare. When DeGreat turned to leave, the cab driver grabbed him and threw him onto the car. DeGreat testified that âthe next thing [he knew, they were] . . . . fist fighting.â
 
 Â¶7Â Â Â Â Â Â Â  As they fought, DeGreat testified, he felt a burning sensation on his chin, saw blood on his shirt, and asked the cab driver if he had stabbed him. DeGreat testified that the driver then âput his hand behind his leg . . . [and DeGreat] saw something gleam in the [cab driverâs] hand.â Believing it was a weapon, DeGreat took a knife out of his pocket. When the cab driver approached, DeGreat cut him. The cab driver then fled.Â 


 
 Â¶8Â Â Â Â Â Â Â  The cab driver, in contrast, testified that DeGreat refused to get out of the cab. When DeGreat inexplicably crawled into the back seat, the driver became afraid and exited the cab. DeGreat got out of the cab and the driver described feeling âsomething to [his] neck,â and afterward realized he was bleeding. The driver testified that he fled and DeGreat chased him. The driver testified that he ran to a convenience store where he located police.
 
 Â¶9Â Â Â Â Â Â Â  DeGreat defended on a theory of self-defense. The jury was instructed that self-defense was an affirmative defense to the attempted murder and first degree assault charges. DeGreat also requested a self-defense instruction in connection with the aggravated robbery charge. DeGreat asserted that self-defense applied to aggravated robbery because the âtakingâ was part of a continuous transaction in which he defended himself from the cab driverâs aggression.[2] The trial court denied the tendered instruction. The jury acquitted DeGreat of attempted murder, firstÂ degree assault, and theft, but convicted him of reckless assault and aggravated robbery.


 
 B. Preservation and Standard of Review
 
 Â¶10Â Â Â Â Â Â Â  We first reject the Peopleâs contention that DeGreat did not preserve this claim because he did not specifically object during the jury instruction conference. Tendering the desired instruction sufficiently preserved this claim. See People v. Ridgeway, 2013 COA 17, Â¶10 (tendering an alternative jury instruction sufficiently preserved a contention that the given jury instructions were inadequate); accord People v. Pahl, 169 P.3d 169, 183 (Colo. App. 2006). Therefore, we review the jury instructions de novo to determine if they accurately informed the jury of the governing law. People v. Oram, 217 P.3d 883, 893 (Colo. App. 2009).
 
 C. Self-Defense
 
 Â¶11Â Â Â Â Â Â Â  Colorado recognizes a limited statutory right to use physical force in self-defense. Â§ 18-1-704, C.R.S. 2014. In particular, a person may use physical force to defend himself from what âhe reasonably believes to be the use or imminent use of unlawful physical forceâ by another person. Id. The affirmative defense of self-defense extends to any crime except those requiring a mentalÂ state of recklessness, extreme indifference, or negligence. Â§ 18-1Â­704(1), -704(4); People v. Pickering, 276 P.3d 553, 556 (Colo. 2011) (âWith respect to crimes requiring recklessness, criminal negligence, or extreme indifference, . . . self-defense is not an affirmative defense, but rather an element-negating traverse.â). Barring ambiguity, we construe the self-defense statute as written. See State v. Nieto, 993 P.2d 493, 506 (Colo. 2000).


 
 Â¶12Â Â Â Â Â Â Â  Robbery and aggravated robbery require a defendant to act knowingly; that is, they are general intent crimes. See Â§ 18-1Â­501(6), C.R.S. 2014 (crimes requiring a knowing mental state are general intent crimes). The legislature did not exclude robbery, or any general intent crime, from the crimes for which self-defense is available as an affirmative defense. See id. Nor did the legislature eliminate self-defense for a particular class of crimes, such as crimes against property. See Â§ 18-1-704. Had the legislature intended to exclude robbery from those crimes for which self-defense is available as an affirmative defense, it would have plainly done so. See Frazier v. People, 90 P.3d 807, 811-12 (Colo. 2004); City of Loveland Police Depât v. Indus. Claim Appeals Office, 141 P.3d 943, 954-55 (Colo. App. 2006); cf. People v. Graves, 479 N.E.2d 10,Â 12 (Ill. App. Ct. 1985) (because the state statute expressly excludes aggravated robbery from those crimes for which self-defense is applicable, defendant was not entitled to a self-defense instruction).


 
 Â¶13Â Â Â Â Â Â Â  The Colorado Supreme Court agrees that the affirmative defense of self-defense applies to general intent crimes. See Pickering, 276 P.3d at 555 (self-defense is an affirmative defense to crimes requiring âintent, knowledge, or willfulnessâ). And divisions of this court have applied the self-defense statute to general intent crimes â irrespective of the type of crime. See People v. Taylor, 230 P.3d 1227, 1230 (Colo. App. 2009) (self-defense instruction should have been given as to the charge of knowing illegal discharge of a firearm), overruled on other grounds by Pickering, 276 P.3d 553.
 
 Â¶14Â Â Â Â Â Â Â  Taylor is particularly instructive. There the defendant was charged with illegal discharge of a firearm. Id. at 1229. The trial court denied defendantâs request for a self-defense instruction, finding the defense inapplicable. Id. On appeal, a division of this court reversed, concluding that self-defense is available as an affirmative defense to general intent crimes. Id. at 1230. Relying on cases from other jurisdictions, the court concluded that it would be illogical to allow a defendant to assert self-defense to charges ofÂ assault or murder, but disallow it for a related charge that is âintertwined with the attack necessitating self-defense.â Id. at 1230. Thus, notwithstanding the Peopleâs argument that illegal discharge of a firearm is a âcrime against property, not persons,â Taylor concluded that the defendant was entitled to a self-defense instruction. Id. at 1231; see also People v. Mullins, 209 P.3d 1147, 1151 (Colo. App. 2008) (jury should have been allowed to consider self-defense as an affirmative defense to the crime of inciting or engaging in a riot); cf. People v. Fuller, 781 P.2d 647, 650-51 (Colo. 1989) (self-defense may be an affirmative defense to resisting arrest).


 
 Â¶15Â Â Â Â Â Â Â  The circumstances here are similar to Taylor. Evidence was presented that supported an affirmative self-defense instruction and DeGreat defended against the attempted murder and first degree assault charges on that basis. See Idrogo v. People, 818 P.2d 752, 754 (Colo. 1991) (â[W]here the record contains any evidence tending to establish the defense of self-defense, the defendant is entitled to have the jury properly instructed with respect to that defense.â). And the robbery was intertwined with the assault. That is, there was some evidence that DeGreatâs failure to pay the fareÂ was entangled with his belief that the use of physical force against the cab driver was necessary. Thus, from the testimony presented, the jury could have concluded that DeGreat had the right to defend himself against what he âreasonably believe[d] to be the use or imminent use of unlawful physical force.â Â§ 18-1-704; see Taylor, 230 P.3d at 1230; cf. Commonwealth v. Rogers, 945 N.E.2d 295, 306-07 (Mass. 2011) (based on the facts presented it was not error to give a self-defense instruction for a robbery charge). Consequently, under these facts, it is illogical to allow self-defense as an affirmative defense to some of the general intent crimes, but not all of them. Taylor, 230 P.3d at 1231.


 
 Â¶16Â Â Â Â Â Â Â  True, several decades ago a division of this court concluded that self-defense is not an affirmative defense to aggravated robbery. People v. Beebe, 38 Colo. App. 80, 81, 557 P.2d 840, 841 (1976) (the elements of robbery are inseparable, and â[s]elf-defense cannot justify the taking of a thing of value from the person or presence of anotherâ); see also People v. Laurson, 15 P.3d 791, 794 (Colo. App. 2010).[3] But for two reasons we are not persuaded byÂ Beebe. First, Beebe does not address or analyze the self-defense statute or explain why the plain language permitting self-defense for general intent crimes does not apply to robbery.[4] 38 Colo. App. at 81, 557 P.2d at 841. Second, Beebe cannot be reconciled with the Colorado Supreme Courtâs recognition that self-defense may be asserted in crimes such as robbery involving a mens rea of âintent, knowledge, or willfulness.â Pickering, 276 P.3d at 555. Accordingly, we do not find Beebe persuasive and we decline to follow it.[5]See People v. Smoots, 2013 COA 152, Â¶21 (divisions of the Colorado Court of Appeals are not bound by other divisionsâ decisions).


 
 Â¶17Â Â Â Â Â Â Â  We do not fault the trial court for relying on Beebe. Indeed, it had no alternative. Nevertheless, we conclude that the plain language of section 18-1-704 permits an affirmative self-defense instruction to the general intent crime of aggravated robbery where, as here, the evidence supports such a defense.


 
 Â¶18Â Â Â Â Â Â Â  And, notwithstanding the courtâs other self-defense instructions, we cannot say that the error was harmless. The jury was instructed on self-defense as an affirmative defense to first degree assault and attempted murder, but it acquitted DeGreat of both charges. Instead, the jury found DeGreat guilty of reckless second degree assault, to which self-defense is not an affirmative defense. By convicting DeGreat of reckless assault, the jury did not consider or reject the affirmative defense of self-defense. Thus, we conclude that the refusal to give the self-defense instruction for the charge of aggravated robbery lowered the prosecutionâs burden of proof and was not harmless. See People v. Garcia, 113 P.3d 775, 784 (Colo. 2005); see also Lybarger v. People, 807 P.2d 570, 582-83 (Colo. 1991) (an improper affirmative defense jury instruction that effectively removed the defense from the juryâs consideration and thereby lowered the prosecutionâs burden of proof cannot be deemed harmless); accord Taylor, 230 P.3d at 1230.
 
 Â¶19Â Â Â Â Â Â Â  DeGreatâs aggravated robbery conviction is accordingly reversed and remanded for a new trial.
 
 III. Remaining Contentions


 
 Â¶20Â Â Â Â Â Â Â  To the extent DeGreatâs remaining claims affect the misdemeanor assault conviction, we address them in turn.
 
 A. Batson Challenge
 
 Â¶21Â Â Â Â Â Â Â  DeGreat contends that the trial court erred in denying his challenge under Batson v. Kentucky, 476 U.S. 79 (1986), to the prosecutorâs use of a peremptory challenge to remove Juror M, an African-American, from the panel. DeGreat argues that the trial court improperly denied his challenge because the prosecutorâs proffered race-neutral reason for striking the juror was pretextual and, consequently, insufficient to demonstrate that the jurorâs removal was not racially motivated. We perceive no clear error.
 
 1. The Voir Dire
 
 Â¶22Â Â Â Â Â Â Â  During jury selection, defense counsel extensively questioned prospective jurors about the necessity and moral acceptability of self-defense. When asked about his beliefs on the law permitting the use of force in self-defense, Juror M responded, âI agree with the law. As an individual, myself, I would be 100 percent defending myself.â Juror M was not questioned further regarding self-defense.Â 


 
 Â¶23Â Â Â Â Â Â Â  Defense counsel later asked Juror M to respond to a hypothetical related to the credibility of police officers. Juror M asked defense counsel to clarify before answering the question.
 
 Â¶24Â Â Â Â Â Â Â  After the parties began exercising peremptory challenges, Juror M interrupted the proceedings to request a bathroom break. The court allowed a five minute recess. Upon resuming the proceedings, the prosecution exercised its second peremptory strike on Juror M. Defense counsel then asserted a Batson challenge. As grounds for the challenge, counsel contended that Juror M was the only African-American on the panel and that he had given no responses during voir dire that âwould subject him to be kicked by the state other than race.â
 
 Â¶25Â Â Â Â Â Â Â  The prosecutor responded that the venire had other persons of color. And the prosecutor explained that in response to a question about self-defense, Juror M made a âvery quick and assertive statementâ that he would exercise his right of self-defense and that he âsat forward and answered very quickly and in a different tone.â The prosecutor also suggested that Juror M âseemed frailâ and appeared âconfusedâ when asked to respond to the hypothetical. These characteristics, combined with Juror Mâs request for aÂ bathroom break, led the prosecutor to have âconcerns about [Juror Mâs] attention span.â[6]


 
 Â¶26Â Â Â Â Â Â Â  Stating its belief that Juror M was capable of following the law on self-defense, the court asked for further explanation. The prosecutor elaborated that it excused Juror M because of Juror Mâs âvivid reactionâ and âvociferous[]â statement that, if threatened, he âpersonally would use forceâ to defend himself. The prosecutor emphasized that it was not asserting a causal challenge to Juror M based on any perceived inability to follow the law, but was instead exercising a peremptory due to Juror Mâs âbellicose response to [the self-defense] issue.â Specifically, the prosecutor pointed out that someone with such a response âmay not be . . . as good a juror . . . [as] somebody that is more pacifistic.â
 
 Â¶27Â Â Â Â Â Â Â  Defense counsel did not dispute the prosecutorâs characterization of Juror Mâs tone or demeanor. Indeed, defenseÂ counsel acknowledged that Juror M âwas rather strong in his assertion that he would defend himself.â But he argued that Juror Mâs own vulnerability â exhibited by his use of a cane and that he âappears to have some disabilityâ â âmay accountâ for Juror Mâs response. Defense counsel did not suggest that other jurors exhibited a similar tone or were similarly assertive when questioned about self-defense and did not ask the trial court to conduct a comparative juror analysis.


 
 Â¶28Â Â Â Â Â Â Â  The court allowed the peremptory challenge, finding that the prosecutor had articulated a âgood faith . . . nonracial reason for striking [Juror M].â Namely, â[i]n response to voir dire questions [regarding] self-defense, [Juror M] was very assertive of his right to use self-defense.â Accordingly, the court denied the Batson challenge.
 
 2. Governing Law
 
 Â¶29Â Â Â Â Â Â Â  Racial discrimination in jury selection violates the Equal Protection Clause, harming not only the defendant but also the excused jurors and the community at large. Batson, 476 U.S. at 86-87. Purposeful discrimination in exercising peremptory challenges is therefore impermissible. Id. at 89; Valdez v. People,Â 966 P.2d 587, 589 (Colo. 1998). The ultimate burden of persuasion regarding racial motivation always rests with the party opposing the peremptory challenge. Purkett v. Elem, 514 U.S. 765, 768 (1995); accord People v. Wilson, 2015 CO 54M, Â¶14.


 
 Â¶30Â Â Â Â Â Â Â  In Batson, the Supreme Court outlined a three-step analysis that a trial court must follow when a defendant claims that a prosecutorâs peremptory challenge is racially motivated. 476 U.S. at 86-87; Valdez, 966 P.2d at 589; People v. Phillips, 2012 COA 176, Â¶159. The defendant must first make a prima facie showing that the prosecutor excluded a potential juror based on race by demonstrating that the prosecutor struck a juror who is part of a âcognizable racial groupâ and that the totality of the circumstances give rise to an inference of discrimination. See Valdez, 966 P.2d at 589-90 (âThe prima facie standard is not a high one; the defendant is not required to prove by a preponderance of the evidence that discrimination occurred.â).
 
 Â¶31Â Â Â Â Â Â Â  If the defendant successfully presents a prima facie case for discrimination, the prosecutor must provide a race-neutral explanation for removing the juror. Id. at 590. The race-neutral explanation need not be persuasive or even plausible. People v.Â Robinson, 187 P.3d 1166, 1172 (Colo. App. 2008). Unless a discriminatory intent is inherent in the prosecutorâs explanation, the reason is deemed race-neutral. Hernandez v. New York, 500 U.S. 352, 360 (1991).


 
 Â¶32Â Â Â Â Â Â Â  In the third and final step, after considering the race-neutral explanation and the response, the trial court must decide whether the defendant has proved purposeful racial discrimination. Snyder v. Louisiana, 552 U.S. 472, 477 (2008); Valdez, 966 P.2d at 590-91; People v. OâShaughnessy, 275 P.3d 687, 690 (Colo. App. 2010), affâd, OâShaughnessy v. People, 269 P.3d 1233 (Colo. 2012). In doing so, the court must consider all relevant evidence as well as the credibility and demeanor of the attorney exercising the peremptory strike. See Miller-El v. Dretke, 545 U.S. 231, 239 (2005); People v. Collins, 187 P.3d 1178, 1182-83 (Colo. App. 2008); Robinson, 187 P.3d at 1173. Because the evaluation of credibility and demeanor âlie[s] peculiarly within a trial judgeâs province,â we review a trial courtâs decision on step three only for clear error. Snyder, 552 U.S. at 477 (internal quotation marks omitted); Wilson, Â¶13. And we defer to the trial courtâs finding absent exceptional circumstances. Snyder, 552 U.S. at 477.


 
 3. Analysis
 
 Â¶33Â Â Â Â Â Â Â  DeGreat contends that the prosecutorâs stated basis for the strike â Juror Mâs reaction to self-defense questioning â was pretextual because several other jurors gave similar responses when questioned about self-defense. We perceive no clear error.
 
 Â¶34Â Â Â Â Â Â Â  The prosecutorâs explanation regarding Juror Mâs response to self-defense was not based upon the content of Juror Mâs response â that he would â100 percentâ use force to defend himself â but rather on the tone and demeanor in which Juror M responded. And defense counsel, when given the opportunity to respond, did not dispute the prosecutorâs characterization of Juror Mâs tone or demeanor. See OâShaughnessy, 275 P.3d at 695 (the trial court may consider a defendantâs failure to rebut a prosecutorâs explanation as acquiescing to its validity). Rather, counsel acknowledged Juror Mâs âstrongâ response.
 
 Â¶35Â Â Â Â Â Â Â  In light of the prosecutorâs demeanor-based explanation, we cannot say that the trial court clearly erred in finding the prosecution offered a good faith, race-neutral basis for its peremptory challenge. See Snyder, 552 U.S. at 479 (deference is especially warranted where an attorneyâs reasons for exercising aÂ peremptory strike were demeanor-based); see also OâShaughnessy, 275 P.3d at 691-92 (there is âno questionâ that a trial courtâs reliance on a demeanor-based explanation for a strike is entitled to great deference). And given the trial courtâs acceptance of the prosecutorâs good faith explanation, it matters not that the trial court did not âutter[]the magic words âno purposeful discrimination.ââ Wilson, Â¶19.


 
 Â¶36Â Â Â Â Â Â Â  Deference is due even where the trial courtâs credibility or demeanor determination is implicit, cannot be objectively verified, or was not directly observed by the trial court. See Thaler v. Haynes, 559 U.S. 43, 48-49 (2010) (there is no rule barring a court from crediting a prosecutorâs demeanor-based reason for a peremptory strike because the court did not personally observe or recall the prospective jurorâs demeanor); OâShaughnessy, 275 P.3d at 691 (courtâs credibility finding need not be express); Robinson, 187 P.3d at 1174 (a reviewing court need not be able to independently confirm the prosecutorâs stated reason for exercising a peremptory challenge nor must it question a trial courtâs ruling merely because it is not accompanied by an express credibility finding).


 
 Â¶37Â Â Â Â Â Â Â  To be sure, it is preferable for a trial court to make specific findings when possible â in particular, on the issues of credibility and demeanor â regarding its reasons for denying a Batson challenge. Such findings improve the appellate record and permit more meaningful review. But because nothing in the record here either clearly refutes or contradicts the prosecutorâs demeanor-based explanation, we will not question the prosecutorâs credibility or second-guess the trial courtâs finding that the prosecutor offered a good faith explanation.
 
 Â¶38Â Â Â Â Â Â Â  DeGreat rightly states that an otherwise race-neutral explanation may be called into question when jurors with similar views, but not of a cognizable racial group, are not excused. See Snyder, 552 U.S. at 480. He contends that because other jurors expressed views on self-defense similar to Juror Mâs, the prosecutorâs reason was pretextual. He thus asks this court to engage in a comparative juror analysis to affirm his contention. DeGreat did not make this request at trial, and we decline to undertake such an analysis now. See Wilson, Â¶22 (declining to examine, on appellate review, whether similarly situated venire members were treated differently).Â 


 
 Â¶39Â Â Â Â Â Â Â  We are particularly not inclined to engage in a comparative juror analysis where, as here, the prosecutorâs explanation was not based on the content of Juror Mâs response but rather on his tone and demeanor. Cf. id. at Â¶18 (âOnly the trial court can assess nonÂ­verbal cues, such as hesitation, voice inflection, and facial expressions, that are not recorded on a transcript.â). The unremarkable fact that other jurors agreed that self-defense might be appropriate in some circumstances does not contradict the prosecutorâs demeanor-based explanation for striking Juror M. Divorced from the nuances of tone and demeanor, other jurorsâ similar responses add little to the question of whether Juror Mâs strike was pretextual.
 
 Â¶40Â Â Â Â Â Â Â  This is not to say that an appellate court must never conduct a comparative juror analysis. For example, where nondemeanor-based factors form the basis of a peremptory challenge, a comparative juror analysis may be appropriate. Indeed, Snyder presents such a circumstance. There, the prosecutor offered one demeanor-based and one nondemeanor-based explanation for aÂ peremptory challenge.[7]Snyder, 552 U.S. at 478. The trial court denied the Batson challenge without any explanation. Id. at 478Â­79. On appeal, the Supreme Court engaged in a comparative juror analysis of the nondemeanor-based explanation and concluded the explanation was clearly refuted by the record. Id. at 479-82; see also Thaler, 559 U.S. at 48-49 (in Snyder, the Court concluded that, after a comparative analysis of similarly situated jurors, the record refuted the prosecutorâs nondemeanor-based explanation); accord People v. Beauvais, 2014 COA 143, Â¶16 (the Snyder record refuted the prosecutorâs explanation that was not based on demeanor).


 
 Â¶41Â Â Â Â Â Â Â  With respect to the demeanor-based challenge, the Supreme Court did not conduct a comparative juror analysis. Rather, the Court noted that nothing in the record suggested that the trial court placed any weight on the demeanor-based explanation in denying the Batson challenge. 552 U.S. at 485. Importantly, the Court recognized that there was no ârealistic probabilityâ that this potential reason could be explored more than a decade after trial.Â Id. at 486. Thus, the Court reversed and remanded for a new trial. Id. 8


 
 Â¶42Â Â Â Â Â Â Â  In sum, we cannot conclude that the trial court clearly erred in finding that the prosecutor offered a good faith, race-neutral explanation for striking Juror M.
 
 B. Plea Bargain Testimony
 
 Â¶43Â Â Â Â Â Â Â  DeGreat next contends that the trial court plainly erred in failing to sua sponte strike testimony that DeGreat had been offered a plea bargain. We disagree.
 
 Â¶44Â Â Â Â Â Â Â  During direct examination, the victim was asked about DeGreatâs alleged attempts to bribe him not to appear for trial. In response to a question about phone calls he had received from DeGreatâs contacts, the victim made the following statement: âI was scared in a way. I asked him . . . I was aware that Mr. DeGreat was offered a plea bargain . . . I asked him . . . Is $7,000 worth a manâs life?â DeGreatâs counsel did not object. The prosecutor neverÂ referenced the remark or the plea offer during the remainder of trial.


 
 Â¶45Â Â Â Â Â Â Â  Because no contemporaneous objection was raised, we review for plain error. People v. Miller, 113 P.3d 743, 749 (Colo. 2005). Plain error is obvious and substantial, so âundermin[ing] the fundamental fairness of the trial itself . . . as to cast serious doubt on the reliability of the judgment of conviction.â Hagos v. People, 2012 CO 63, Â¶14 (internal quotation marks omitted); see People v. Sepulveda, 65 P.3d 1002, 1006 (Colo. 2003). When the law surrounding the challenged issue is not established, error, if any, cannot be plain or obvious. People v. Petschow, 119 P.3d 495, 504Â­05 (Colo. App. 2004).
 
 Â¶46Â Â Â Â Â Â Â  DeGreat identifies no Colorado authority concluding that it is error to admit evidence of a plea offer. Rather, DeGreat relies almost exclusively on a Mississippi Supreme Court case. Because no binding precedent clearly precludes evidence regarding plea offers, the trial court could not have been expected to sua sponte strike such unsolicited testimony. See id. (plain error assumes that the trial court should have intervened without counselâs notice because the error was so obvious based on the current law).


 
 Â¶47Â Â Â Â Â Â Â  Accordingly, the trial court did not plainly err.
 
 C. Jail Telephone Calls
 
 Â¶48Â Â Â Â Â Â Â  Lastly, DeGreat contends that the trial court erred in admitting recorded phone calls he placed from jail. We disagree.
 
 Â¶49Â Â Â Â Â Â Â  Prior to trial, DeGreat moved to suppress introduction of taped phone calls, placed from the jail, in which he attempted to solicit the victim not to appear for trial. Each taped call begins with a warning: âThis call may be monitored or recorded.â
 
 Â¶50Â Â Â Â Â Â Â  After an evidentiary hearing, the trial court denied DeGreatâs motion to suppress the taped calls. The court concluded that the phone calls constituted permissible CRE 404(b) evidence. By attempting to coerce the victim not to testify, the court concluded, DeGreat sought to conceal his role in the crime and, accordingly, the calls âinfer a consciousness of guilt.â See People v. Kyle, 111 P.3d 491, 499-500 (Colo. App. 2004) (evidence showing a defendantâs consciousness of guilt and âcontinual efforts to control the victimâ admissible under CRE 404(b)). The court also found that DeGreat had no reasonable expectation to privacy in his jailhouse calls and that recording the calls did not violate theÂ Fourth Amendment or Coloradoâs wiretapping and eavesdropping statute.


 
 Â¶51Â Â Â Â Â Â Â  DeGreat contends that the trial court erred in denying his motion to suppress. In his view, recording his jailhouse calls constituted an illegal search and seizure in violation of the Fourth Amendment. And he argues that recording the calls violated the wiretapping statute, section 18-9-303(1), C.R.S. 2014. DeGreatâs arguments present a mixed question of fact and law, which we review by deferring to the trial courtâs factual findings while reviewing its conclusions of law de novo. People v. Mares, 263 P.3d 699, 702 (Colo. App. 2011).
 
 Â¶52Â Â Â Â Â Â Â  The Fourth Amendment guarantees protection only from unreasonable searches and seizures. Missouri v. McNeely, 133 S. Ct. 1552, 1558, 569 U.S. ___, ___ (2013). Generally, warrantless searches are presumptively unreasonable. People v. Lee, 93 P.3d 544, 547 (Colo. App. 2003). But a warrant is not required where an individual has no reasonable expectation of privacy. Id. Specifically, recording a phone conversation does not constitute a Fourth Amendment violation unless an individual has a justifiableÂ expectation of privacy regarding the conversation. People v. Blehm, 44 Colo. App. 472, 475, 623 P.2d 411, 414 (1980).


 
 Â¶53Â Â Â Â Â Â Â  Prisoners have little, if any, reasonable expectation of privacy while incarcerated. People v. Salaz, 953 P.2d 1275, 1277 (Colo. 1998); Blehm, 44 Colo. App. at 476, 623 P.2d at 415. And there is no reasonable expectation of privacy in phone calls placed from jail. Mares, 263 P.3d at 706. This is particularly true where, as here, an inmate is not misled into believing that his statements were not being recorded, but instead expressly informed that calls were being monitored. People v. Zamora, 220 P.3d 996, 1000 (Colo. App. 2009).
 
 Â¶54Â Â Â Â Â Â Â  The trial court therefore did not abuse its discretion in finding that DeGreat had no reasonable expectation of privacy when he made the jailhouse calls. Accordingly, DeGreatâs Fourth Amendment rights were not violated when his jailhouse calls were recorded. See Mares, 263 P.3d at 706.
 
 Â¶55Â Â Â Â Â Â Â  Nor do we agree with DeGreatâs argument that his phone calls were recorded in violation of the wiretapping statute. Although section 18-9-303(1) generally bars individuals from knowingly recording a phone call without the consent of either party to theÂ call, it does not apply to inmate phone calls placed from jail. Id.; Blehm, 44 Colo. App. at 477-78, 623 P.2d at 416.


 Â¶56Â Â Â Â Â Â Â  Thus, the trial court did not err in admitting the jailhouse phone calls.

 IV. Conclusion

 Â¶57Â Â Â Â Â Â Â  The judgment of conviction for aggravated robbery and the related crime of violence count are reversed and the case is remanded for a new trial on those counts. The judgment is otherwise affirmed.

 JUDGE ROMÃN and JUDGE MILLER concur.


 [1] The trial court subsequently reduced the second degree assault conviction to third degree assault â negligence with a deadly weapon.

 [2] The âtakingâ consisted of DeGreatâs failure to pay the fourteen dollars owed for the cab fare. Because the parties do not raise the issue, we assume without deciding that this failure to pay is a âtaking.â See Â§Â§ 18-4-301, -302, C.R.S. 2014 (listing elements of robbery and aggravated robbery).

 [3] Laurson replicates Beebeâs holding in dicta without analyzing the self-defense statute and therefore does not alter our analysis.

 [4] Nor could Beebe have addressed the statuteâs express exclusion of certain crimes, as this subsection was added after Beebe was decided. See Ch. 83, sec. 1, Â§ 18-1-704, 2003 Colo. Sess. Laws 795.

 [5] Nothing in this opinion should be read, however, as undermining the rule that, in the context of felony murder, â[s]elf-defense may be available as an affirmative defense to a predicate felony but not as to the resulting death.â People v. Renaud, 942 P.2d 1253, 1256 (Colo. App. 1996).

 [6] After the prosecutor set forth a basis for the peremptory challenge, a second prosecutor also commented that Juror M indicated in his questionnaire that he had a friend who was convicted of drug possession. However, the prosecutor admitted that other jurors gave similar answers. Beyond this comment, the record reflects no further argument or discussion concerning the questionnaire. And though the trial court noted the reference to the questionnaire, it did not rely on it as a basis for denying the Batson challenge.

 [7] The demeanor-based explanation was the jurorâs apparent nervousness and the nondemeanor-based explanation was that the jurorâs busy schedule might cause him to acquit to avoid a penalty phase.

 [8] Unlike Snyder, this is not a case where the prosecutor relied on both nondemeanor and demeanor-based reasons to support the peremptory challenge. Cf. People v. Collins, 187 P.3d 1178, 1183Â­84 (Colo. App. 2008) (reversing where nondemeanor-based reasons were refuted by the record and the trial court did not credit the demeanor-based reasons).




These opinions are not final. They may be modified, changed or withdrawn in accordance with Rules 40 and 49 of the Colorado Appellate Rules. Changes to or modifications of these opinions resulting from any action taken by the Court of Appeals or the Supreme Court are not incorporated here. 



Colorado Court of Appeals Opinions || July 30, 2015


Back