Opinion by JUDGE ASHBY
¶ 1 Defendant, Jeritt Joseph Tardif, appeals the judgment of conviction entered on jury verdicts finding him guilty of attempted second degree murder, first degree assault, conspiracy to commit first degree assault, and three crime of violence counts. We reverse in part, affirm in part, and remand.
I. Background
¶ 2 Tardif's friend, Joaquin Soto, was at a skate park and got into an argument with the victim. Tardif and Soto were members of the same gang, and the victim was wearing the colors of a rival gang. After the argument, Soto called Tardif and told him that the victim was "flexing," "tripping," and threatening to "call his homies."
¶ 3 Tardif arrived at the skate park about ten minutes later with a loaded handgun. When Tardif arrived, the victim was standing in the middle of the skate park, wearing no shirt with a bandana the color of the rival gang covering his face. Tardif and Soto walked up to the victim, and Tardif shot him once in the abdomen. The victim fled and survived.
¶ 4 Other people at the skate park used their cell phones to record video of part of the initial argument between Soto and the victim as well as the shooting. The prosecution obtained the videos and charged Tardif with several criminal counts. At trial, the prosecution introduced these videos, as well as two slow-motion recordings of the shooting created by the prosecution. The jury found Tardif guilty of attempted second degree murder, first degree assault, conspiracy to commit first degree assault, and three crime of violence counts. The trial court convicted him and sentenced him to twenty-two years in the custody of the Department of Corrections.
¶ 5 Tardif appeals, arguing that the trial court erred by (1) improperly instructing the jury on the mitigating factor of heat of passion provocation; (2) improperly instructing the jury on self-defense; (3) admitting the slow-motion recordings of the cell phone videos; and (4) allowing improper closing argument by the prosecution. We conclude that the court's heat of passion provocation instruction requires reversal of Tardif's attempted second degree murder and first degree assault convictions (and the related crime of violence counts), but not his conspiracy conviction. We then address whether his remaining arguments require reversal of his conspiracy conviction and conclude that they do not.
II. Heat of Passion Provocation Instruction
¶ 6 Heat of passion provocation is a mitigating factor for attempted second degree murder and first degree assault that, if applicable, the prosecution is required to disprove beyond a reasonable doubt. § 18-3-103(3)(b), C.R.S. 2017 (second degree murder); § 18-3-202(2)(a), C.R.S. 2017 (first degree assault); People v. Villarreal , 131 P.3d 1119, 1127 (Colo. App. 2005), aff'd on other grounds , 2012 CO 64, 288 P.3d 125.
¶ 7 Tardif argues that the trial court erred by failing to instruct the jury that the prosecution had the burden to prove the absence of heat of passion provocation beyond a reasonable doubt. He argues that this error lowered the prosecution's burden of proof and therefore violated his constitutional right to due process.
¶ 8 The prosecution first responds that we should not address this issue at all because Tardif waived it. Alternatively, if Tardif did *64 not waive it, the prosecution argues that the issue is unpreserved and we should reverse only if the error was plain.
¶ 9 We conclude that Tardif preserved this issue for our review and that the trial court's instructions require us to reverse Tardif's attempted second degree murder and first degree assault convictions.
A. Preservation
¶ 10 To preserve an alleged error for appellate review, a defendant's actions must allow the trial court "a meaningful chance to prevent or correct the error and create[ ] a record for appellate review." Martinez v. People , 2015 CO 16, ¶ 14, 344 P.3d 862. An alleged instructional error is preserved if the defendant tenders the desired relevant instruction even if the defendant does not object or otherwise raise the issue during the jury instruction conference. See People v. DeGreat , 2015 COA 101, ¶ 10, --- P.3d ---- (cert. granted Aug. 1, 2016).
¶ 11 Here, Tardif tendered jury instructions to the trial court that defined heat of passion provocation and also explained that the burden was on the prosecution to prove the absence of heat of passion provocation beyond a reasonable doubt. At the on-the-record jury instruction conference, the trial court ruled that although Tardif was entitled to heat of passion provocation instructions, it would not give the exact instructions that Tardif tendered. The substance of the heat of passion provocation instructions that the court would give to the jury was not discussed. Although Tardif did not raise the prosecution's burden to prove heat of passion provocation beyond a reasonable doubt during the instruction conference, the fact that he tendered an instruction to that effect was sufficient to preserve the issue for appeal. See id.
¶ 12 We also disagree with the prosecution that at the end of the instruction conference, Tardif waived the right to raise this issue on appeal. "[W]aiver is the 'intentional relinquishment or abandonment of a known right.' " United States v. Olano , 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (citation omitted). It occurs when a defendant "specifically removes claims from the trial court's consideration." People v. Rediger , 2015 COA 26, ¶ 54, 411 P.3d 907 (cert. granted Feb. 16, 2016).
¶ 13 At the end of the conference, the following exchange occurred.
The Court: Defense, have you received copies of the [jury] instructions and verdict forms?
[Defense Counsel]: Yes, Your Honor.
The Court: I have marked the heat of passion packet of jury instructions that you've tendered. We've adopted most of yours but changed others, so I've marked that as an exhibit for appellate purposes that will include all your tendered [sic]. Other than that, do you have any additions or corrections or additional tenders that you wish to make?
[Defense Counsel]: Not at this time, Your Honor.
The Court: All right.
[Defense Counsel]: Thank you.
The Court: So then we're ready to bring in the jury and go to final instructions and closing arguments.
The trial court then brought the jury back into the courtroom, read it the final packet of instructions, and gave it written instructions.
¶ 14 We conclude that Tardif did not waive his right to challenge the heat of passion provocation instructions in this exchange. The trial court asked Tardif if, aside from his tendered packet of instructions, he wished to raise any additional instructional issues. Tardif replied that he did not. Because the trial court's question explicitly excluded the tendered packet of instructions, Tardif's response that he had no further issues to raise did not apply to those instructions and did not waive his right to challenge them on appeal.
¶ 15 We therefore address Tardif's challenge to the heat of passion provocation instructions.
B. Instructions were Reversible Error
¶ 16 We review the trial court's heat of passion provocation instructions de novo. See *65 Riley v. People , 266 P.3d 1089, 1092 (Colo. 2011). We consider all the instructions together to determine whether, as a whole, they properly informed the jury that it was the prosecution's burden to prove the absence of heat of passion provocation beyond a reasonable doubt. Id. at 1092-93.
¶ 17 Instructions that improperly lower the prosecution's burden of proof cannot be deemed harmless and require reversal. See People v. DeWitt , 275 P.3d 728, 733 (Colo. App. 2011).
¶ 18 The second degree murder statute and the first degree assault statute provide that committing either offense while acting in the heat of passion due to a serious and highly provoking act by the victim mitigates the punishment for the offense. § 18-3-103(3)(b) (second degree murder); § 18-3-202(2)(a) (first degree assault). If a defendant requests a heat of passion provocation jury instruction and the trial court determines that the defendant is entitled to one, the court must instruct the jury (1) on what constitutes heat of passion provocation and (2) that the prosecution bears the burden to prove the absence of heat of passion provocation beyond a reasonable doubt. See Villarreal , 131 P.3d at 1127. The jury then determines, often through a special interrogatory, whether the prosecution has met this burden. See People v. Lee , 30 P.3d 686, 689 (Colo. App. 2000).
¶ 19 Here, the prosecution does not dispute, and we agree, that the heat of passion provocation instructions failed to inform the jury that the prosecution had to prove the absence of heat of passion provocation beyond a reasonable doubt. Nevertheless, the prosecution argues that Tardif is not entitled to relief because (1) the standard instructions on the prosecution's burden of proof and reasonable doubt were sufficient and alternatively (2) any error was harmless because the trial court should not have given heat of passion provocation instructions in the first place. We disagree.
¶ 20 First, we conclude that the instructions, read and considered together, did not properly instruct the jury on the prosecution's burden to prove the absence of heat of passion provocation beyond a reasonable doubt. The trial court instructed the jury that the burden was on the prosecution "to prove to the satisfaction of the jury beyond a reasonable doubt the existence of all of the elements necessary to constitute the crime charged." Additional instructions emphasized that this burden of proof applied to "each and every material element of any lesser included offense which is necessarily included in any offense charged in the information." The instructions explicitly identified all of the elements of the charged offenses. But heat of passion provocation was not identified in the instructions, verdict forms, or anywhere else as an element of any offense. Indeed, heat of passion provocation is not an element of an offense; it is a statutory mitigating factor. See People v. Sepulveda , 65 P.3d 1002, 1007 (Colo. 2003). Nothing in the instructions stated that the prosecution's burden to prove all the elements of the charged offenses beyond a reasonable doubt also applied to disproving heat of passion provocation. We therefore conclude that the instructions, considered together, failed to properly instruct the jury on the prosecution's burden of proof.
¶ 21 Second, we disagree with the prosecution's argument that the trial court erred by giving heat of passion provocation instructions in the first place because the evidence did not warrant it.
¶ 22 When reviewing whether an instruction was warranted, we consider the evidence in the light most favorable to the defendant. See Cassels v. People , 92 P.3d 951, 955 (Colo. 2004). "A provocation instruction is warranted whenever a defendant shows some supporting evidence-regardless of how incredible, unreasonable, improbable, or slight it may be-to establish each factor [of heat of passion provocation]." Id. at 956. Heat of passion provocation requires that (1) the offense was performed upon a sudden heat of passion; (2) the offense was caused by a serious and highly provoking act of the victim; (3) the provoking act was sufficient to excite an irresistible passion in a reasonable person; and (4) between the provocation and the offense, an insufficient amount of time passed for the voice of reason and humanity to be heard. See § 18-3-103(3)(b) (second degree murder statute); § 18-3-202(2)(a) (first *66 degree assault statute); Cassels , 92 P.3d at 956.
¶ 23 The trial court determined that although it was improbable that Tardif actually shot the victim in the heat of passion, the evidence admitted at trial supported giving a heat of passion provocation instruction. We agree.
¶ 24 Tardif testified that when he arrived at the skate park, Soto pointed at the victim, who was standing with his hands in his pockets, shirtless, and wearing a bandana the color of a rival gang over his face. As Tardif described it, "I had met up with [Soto], and then he had just pointed at the [victim], and then I walked up with him and I didn't really process anything, I didn't really know what was going on, I just more or less acted than anything." Tardif testified that the victim's behavior was "intimidating" and that "nine out of ten times when somebody has a bandana on their face they're gonna do dirt or they're gonna do something that they're not supposed to be doing and try not to get caught for it."
¶ 25 This testimony, viewed in the light most favorable to Tardif, supported giving the instruction that Tardif shot the victim because he was provoked to do so upon a sudden heat of passion. Although this justification for Tardif's actions may have been improbable and unreasonable, there was some evidence to support it. Tardif was therefore entitled to the instructions. See Cassels , 92 P.3d at 956.
¶ 26 Because Tardif was entitled to heat of passion provocation instructions and the instructions failed to inform the jury that it was the prosecution's burden to disprove heat of passion provocation beyond a reasonable doubt, we conclude that the trial court erred. This error allowed the jury to decide that Tardif did not act due to heat of passion provocation based on something less than proof beyond a reasonable doubt. The error thus lowered the prosecution's burden of proof, violated Tardif's constitutional right to due process, and requires reversal. See People v. Garcia , 113 P.3d 775, 784 (Colo. 2005) ("Because a defendant's constitutional right to due process is violated by an improper lessening of the prosecution's burden of proof, such error cannot be deemed harmless.").
¶ 27 We reverse Tardif's convictions for attempted second degree murder, first degree assault, and the three associated crime of violence counts. Our conclusion does not, however, affect his conspiracy to commit first degree assault conviction because heat of passion provocation is not a mitigating factor for that offense. We therefore address Tardif's remaining arguments only to the extent that they affect his conspiracy conviction or are likely to recur on remand.
III. Self-Defense Instructions
¶ 28 Tardif argues that the trial court's self-defense instructions included several reversible errors. We first address Tardif's argument that the trial court erred by failing to instruct the jury that self-defense is an affirmative defense to conspiracy to commit first degree assault. Because we conclude that self-defense is not an affirmative defense to conspiracy to commit first degree assault, any additional alleged error in the self-defense instructions had no affect on Tardif's conspiracy conviction, and we need not address it.
A. Preservation
¶ 29 We first disagree with the prosecution that Tardif's argument is either waived or unpreserved. We apply the same general legal principles on preservation as we did in Part II.A above, and need not restate them.
¶ 30 On the second-to-last day of trial, the trial court held what it called "preliminary discussions regarding the instructions." At this time, the prosecution had tendered several jury instructions, and the parties and the court talked generally about what instructions the jury should receive. During that conversation, the following exchange occurred.
The Court: Is self-defense an affirmative defense to conspiracy?
[Defense Counsel]: I don't think so, Judge. I can research that. But we would probably depending upon what happens tomorrow request an instruction. A self-defense *67 instruction. Whether it goes to that. I don't believe so. We probably have to research that.
The Court: Give it some thought. I don't think it is off the top of my head. Something we can talk about.
¶ 31 Tardif later tendered his desired self-defense instruction, which stated that self-defense "is an affirmative defense to all the crimes of which Mr. Tardiff [sic] is charged." Conspiracy to commit first degree assault was one of the charged offenses.
¶ 32 The issue did not arise again during subsequent discussions about the jury instructions, and neither the instructions nor the verdict forms required the jury to determine whether Tardif committed conspiracy to commit first degree assault in self-defense. We conclude that by tendering an instruction stating that self-defense did apply to the conspiracy charge, even after equivocally suggesting that it might not, Tardif preserved this argument. See DeGreat , ¶ 10.
¶ 33 Moreover, the record indicates that Tardif's tendered self-defense instruction was part of the "heat of passion packet" of instructions that the court excluded from consideration when it asked Tardif whether he had additions or corrections to the instructions as a whole. Therefore, for the same reason that Tardif's heat of passion provocation instruction argument was not waived, his self-defense instruction argument is also not waived.
B. Self-Defense is Not an Affirmative Defense to Conspiracy
¶ 34 As above, we review whether the trial court properly instructed the jury de novo. See Riley , 266 P.3d at 1092. It is the trial court's duty to correctly instruct the jury on all matters of law relevant to the case. Id. A trial court's failure to give an affirmative defense instruction when one is warranted is constitutional error because it violates the defendant's constitutional right to a trial by a jury. See People v. Newell , 2017 COA 27, ¶ 20, 395 P.3d 1203. Constitutional error requires reversal unless the error is harmless beyond a reasonable doubt. See Hagos v. People , 2012 CO 63, ¶ 11, 288 P.3d 116.
¶ 35 We are unaware of any Colorado opinion that has addressed whether self-defense can be an affirmative defense to a conspiracy charge. Tardif points out that generally, self-defense is an affirmative defense to "crimes requiring intent, knowledge, or willfulness." People v. Pickering , 276 P.3d 553, 555 (Colo. 2011). And conspiracy to commit first degree assault requires intent to promote or facilitate the commission of first degree assault. § 18-2-201(1), C.R.S. 2017. Thus, according to Tardif, self-defense can be an affirmative defense to conspiracy. We disagree based on a deeper analysis of the nature of the affirmative defense of self-defense.
¶ 36 Affirmative defenses, in general, "do not negate an element of the offense but seek to justify, excuse, or mitigate the commission of the offense." People v. Mullins , 209 P.3d 1147, 1149 (Colo. App. 2008). When asserting an affirmative defense, the defendant admits committing all the elements of the charged offense but asserts that an affirmative defense justified the otherwise criminal conduct. Id.
¶ 37 A person acts in self-defense by "using physical force upon another person in order to defend himself or a third person from what he reasonably believes to be the use or imminent use of unlawful physical force by that other person." § 18-1-704(1), C.R.S. 2017. Consequently, a defendant asserting self-defense as an affirmative defense admits that his use of force satisfies the elements of the charged offense. But the defendant also asserts that the otherwise unlawful use of physical force was justified because it was reasonably necessary to defend himself or another from the victim's use or imminent use of force. And because self-defense justifies the use of physical force, it can be an affirmative defense only to crimes of physical force. Criminal conspiracy is not one of these crimes.
A person commits conspiracy to commit a crime if, with the intent to promote or facilitate its commission, he agrees with another person or persons that they, or one or more of them, will engage in conduct which constitutes a crime or an attempt to commit a crime, or he agrees to *68 aid the other person or persons in the planning or commission of a crime or of an attempt to commit such crime.[1]
§ 18-2-201(1).
¶ 38 Notably, none of the elements of conspiracy require the use of physical force. Self-defense is therefore not an affirmative defense to conspiracy and the trial court did not err by failing to instruct the jury that it was.[2]
C. Additional Allegations of Self-Defense Instruction Errors
¶ 39 Because self-defense is not an affirmative defense to conspiracy, the trial court's instructions on self-defense as an affirmative defense had no impact on Tardif's conspiracy conviction and apply only to his attempted second degree murder and first degree assault convictions. And because we have reversed the attempted murder and assault convictions on different grounds discussed above, we need not address most of Tardif's additional allegations of self-defense instructional error. However, we address one that is likely to arise on remand.
¶ 40 Tardif contends that the trial court erred by instructing the jury on when deadly physical force may be used in self-defense. We agree.
¶ 41 Deadly physical force is defined as "force, the intended, natural, and probable consequence of which is to produce death, and which does, in fact, produce death." § 18-1-901(3)(d), C.R.S. 2017. Because deadly physical force requires death, courts should not instruct the jury on deadly physical force if the victim did not die. See People v. Ferguson , 43 P.3d 705, 707 (Colo. App. 2001). Here, the victim did not die. Therefore, the trial court erred by instructing the jury on deadly physical force.
IV. Slow-Motion Video
¶ 42 Tardif next argues that the trial court erred by admitting slow-motion video recordings of the shooting. This was evidence that supported Tardif's attempted murder and assault convictions, not his conspiracy conviction. Nevertheless, because it is likely to arise on remand, we address the admissibility of the recordings.
¶ 43 We review the trial court's admission of a particular piece of evidence for abuse of discretion. See People v. Trujillo , 2015 COA 22, ¶ 8, 369 P.3d 693.
¶ 44 Relevant evidence is generally admissible. CRE 402. But relevant evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice. CRE 403.
¶ 45 Here, when the prosecution sought to admit two recordings of the shooting that had been slowed down to fifty percent and seventy-five percent of the actual speed, Tardif objected, arguing that the altered recordings would "give the jury a misrepresentation of what occurred." The trial court overruled the objection, stating that the fact that the recordings had been slowed down impacted only the weight that the jury might give to the evidence, not the admissibility of the evidence.
¶ 46 We are aware of no authority standing for the proposition that an altered, slow-motion recording is automatically admissible because the unaltered, real-time version is admissible. Instead, like all other evidence, a slow-motion recording must be independently admissible under the applicable evidentiary rules, including the balancing test articulated in CRE 403. The record indicates that the trial court failed to weigh the slow-motion recordings' probative value against their danger of unfair prejudice. This was an abuse of discretion.
*69 ¶ 47 Applying CRE 403 to the slow-motion recordings, we conclude that the trial court abused its discretion by admitting this evidence. The prosecution argues that the slow-motion recordings were relevant "to explain the sequence of events around the shooting and determine whether defendant acted with aggression or in self-defense." We agree that the slow-motion recordings were relevant on that ground. But the probative value of the slow-motion recordings was very low.
¶ 48 The real-time recording was admitted and clearly showed the sequence of events around the shooting. Indeed, the sequence of events was not a contested issue in this case; Tardif, with gun in hand, walked up to the victim and shot him. The victim was standing still and did not move until he was shot. Because the real-time recordings leave no question about this sequence of events, the slow-motion recordings were largely cumulative and their probative value was low.
¶ 49 Furthermore, the slow-motion recordings' low probative value was substantially outweighed by the danger of unfair prejudice that their admission caused. A contested issue at trial was Tardif's state of mind when he shot the victim: whether the shooting was premeditated, provoked, or an act of self-defense. The time in between an alleged provocation or perceived threat and a person's subsequent action is important in determining whether that person reasonably reacted to the provocation or threat, or acted based on other motivations. Put differently, actions that might appear accidental or reasonably self-defensive in real time have a tendency to appear more intentional and premeditated in slow motion. The real-time recording allowed the jury to judge Tardif's state of mind by viewing the shooting as it actually occurred. But by altering the real-time recordings of the shooting, the slow-motion recordings may have portrayed Tardif's actions as more premeditated than they actually were. Because Tardif's state of mind at the time of the shooting was a disputed issue at trial, the admission of the slow-motion recordings created a danger of unfair prejudice to Tardif that substantially outweighed their probative value.
¶ 50 We therefore conclude that the slow-motion recordings were inadmissible under CRE 403. However, this conclusion applies only to the relevance and probative value arguments that were made in the trial court and to us. If, on remand, the parties wish to articulate different theories of relevance and probative value, the trial court may evaluate and rule on those arguments under CRE 403.
V. Prosecutorial Misconduct
¶ 51 Finally, Tardif argues that two statements by the prosecutor during closing argument constituted prosecutorial misconduct and require reversal. Because Tardif failed to object to either statement during closing argument, we review for plain error. See People v. Cordova , 293 P.3d 114, 121 (Colo. App. 2011). Plain error in this context requires that (1) the misconduct was so flagrant, glaring, or tremendously improper that the trial court should have intervened sua sponte; and (2) the court's failure to do so undermined the fundamental fairness of the trial and cast serious doubt on the reliability of the conviction. Id.
¶ 52 The first allegedly improper statement identified by Tardif was the prosecution's comment on deadly physical force. As explained above, deadly physical force had no impact on Tardif's conspiracy conviction, the only one we have not reversed. We therefore do not address this statement.
¶ 53 Second, Tardif argues that the prosecutor made improper comments about the number of children raised without fathers and improperly injected her personal opinion and morals into the case by stating that although she sometimes got jealous of other people, she was "not calling anyone to kill anyone." We need not decide whether these comments were improper. Even if they were, they do not cause us to seriously doubt the reliability of Tardif's conspiracy conviction because the evidence of his guilt was strong.
¶ 54 The uncontroverted evidence was that Soto told Tardif on the phone that the victim was threatening him. Tardif testified that Soto sounded scared. As a result of that conversation, Tardif quickly headed for the park with his gun and, once at the park, with Soto at his side, approached the victim and *70 shot him. This was strong evidence that Tardif agreed with Soto to inflict serious bodily injury on the victim with a deadly weapon and that Tardif actually did so. We therefore do not doubt the reliability of Tardif's conspiracy conviction and conclude that the prosecutor's allegedly improper statements did not constitute plain error. See People v. McMinn , 2013 COA 94, ¶ 70, 412 P.3d 551 (holding that prosecutor's comments during closing argument were not plain error because, among other things, the evidence supporting defendant's conviction was strong).
¶ 55 Tardif also argues that cumulative error requires reversal of his conspiracy conviction. We disagree because the only errors that could have affected his conspiracy conviction were the prosecutor's allegedly improper statements during closing argument, and we have concluded that these statements do not require reversal.
VI. Conclusion
¶ 56 Tardif's attempted second degree murder and first degree assault convictions are reversed, along with the associated crime of violence convictions. His conspiracy to commit first degree assault conviction is affirmed. The case is remanded to the trial court for retrial or other proceedings consistent with this opinion.
JUDGE ROMÁN and JUDGE NAVARRO concur.

Conspiracy also requires an overt act in pursuance of the conspiracy by a conspirator. § 18-2-201(2), C.R.S. 2017. However, the overt act requirement is not at issue here, and our analysis therefore does not address it.

We express no opinion about whether self-defense can be a traverse defense to conspiracy by negating the element of conspiracy requiring that the agreed upon conduct is a crime. See Doubleday v. People , 2016 CO 3, ¶ 24, 364 P.3d 193 ("crime" means conduct that is punishable by fine or imprisonment). This issue was not raised in the trial court or on appeal and we therefore do not address it.